BRANDT CONSOLIDATED,
INC., Plaintiff,

v.

AGRIMAR CORP. and Goemar,
S.A., Defendants.

No. 91–3364.

United States District Court,
C.D. Illinois,
Springfield Division.

Aug. 13, 1992.

John W. Hofeldt, Stephen Manich, Chicago, Ill., Robert C. Walbaum, Springfield, Ill., for plaintiff.

Paul Bown, Springfield, Ill., Steven L. Brannock, James L. Simon, Tampa, Fla., for defendants.

## OPINION

RICHARD MILLS, District Judge:

This case raises a plethora of issues:

—process patents,

—patent infringement,

—transfer,

—long-arm jurisdiction,

—failure to state a claim,

—the Sherman Act,

—the Lanham Act,

—preliminary injunctions,

—permanent injunctions, and

—summary judgment.

Writings on such broad subject matter are perhaps best left to the likes of Michner—but the task is ours and we do our best.

This order addresses and resolves the following motions: Defendants' motion to transfer the case to Florida (or, alternately, to stay the case); Goemar, S.A.'s motion to dismiss for lack of personal jurisdiction; Defendants' motion to dismiss for failure to state a claim upon which relief can be granted; Plaintiff's motion for partial summary judgment; and Plaintiff's motion for preliminary injunction.

*In sum*, Plaintiff's motion for partial summary judgment is allowed, and all other motions are denied.

### I. *Background*

Agrimar Corp. is the U.S.-based subsidiary of Laboratories Goemar, S.A., a French company. Agrimar primarily develops and sells agricultural foliar nutritional sprays in the United States. Agrimar's principal foliar products are Goemar BM86 and Goemar MZ63, in which the active and essential ingredient is Goemar GA–14, an algae extract. Agrimar has an exclusive license to produce GA–14 pursuant to United States Patent No. 4,023,734 (the "'734 patent"), the scope of which is the primary issue in this case.

Brandt Consolidated is in the business of formulating fertilizer mixtures. Agrimar provided GA–14 to Brandt under two agreements—an August 1986 distribution agreement and a May 1987 tolling agreement. These agreements gave Brandt the right to use GA–14 in certain of its own nutritional products and to blend for Agrimar the Goemar BM86 and MZ63 products. Agrimar thus provided Brandt with the trade secret information on the use of GA–14 in blending liquid fertilizers. Brandt, in

turn, agreed to keep this information confidential and not to use it to make unauthorized products. By contractually limiting Brandt's rights to use GA–14, Agrimar was seeking to prevent Brandt from making products that would compete with Agrimar's products.

Both the distribution and tolling agreements terminated in 1989 pursuant to their terms. Upon termination of the distribution agreement, Brandt was contractually obligated to cease formulating Agrimar's products, to remove all labels bearing Agrimar's trademarks, and to generally refrain from all conduct which would associate Brandt with Agrimar.

Despite the restrictions in the distribution agreement, Brandt apparently manufactured and sold after 1989 a product virtually identical to Agrimar's Goemar BM86—Clawel BM86. In addition to similarities in packaging, Clawel BM86's formulation was identical to Goemar BM86, including the use of GA–14 as the primary ingredient. Upon discovering this apparent violation of the distribution agreement, Agrimar filed suit against Brandt in the Middle District of Florida, Tampa Division, on July 30, 1990 (Case No. 90–935–CIV.T–98C). On August 9, 1990, the Florida court entered a final order, with Brandt's consent, which permanently enjoined Brandt from representing that any Brandt product was authorized by or originated from Agrimar, from using the Agrimar formulations for the BM86 and/or MZ63 products, and from selling any product formulated in the same manner as the BM86 or MZ63 products. The order did not, however, enjoin Brandt from using GA–14 or from making products which contain GA–14.

In November of 1991, Agrimar accused Brandt of violating the terms of the injunction by mixing and selling formulations containing GA–14 to Vigoro Industries, Inc., a competitor of Agrimar who marketed the formulations in Florida. In addition, Agrimar accused Brandt of violating the injunction by providing an Agrimar comparison study to Vigoro to use on its label, thus suggesting to Vigoro that Agrimar had authorized Brandt's conduct. In response to Brandt's actions, Agrimar sent letters to Brandt and Vigoro indicating that the use of GA–14 was either a patent infringement or a violation of Agrimar's common law rights against unfair competition and breach of contract, as well as a violation of the 1990 injunction. Ultimately, on January 15, 1992, Agrimar filed in the Florida court a motion for an order adjudging Brandt in contempt of the 1990 injunction. Agrimar also filed a patent infringement suit against Brandt. On June 17, 1992, the Florida court denied Agrimar's contempt motion. The patent infringement suit is still pending.

Brandt, however, had preempted Agrimar by filing this suit against Agrimar and Goemar, S.A., on December 27, 1991, for declaratory judgment, an injunction, and compensatory and punitive damages for Agrimar's "unjustified" patent infringement claims. Brandt primarily seeks a declaratory judgment that it has not infringed upon the '734 patent by using GA–14 in its own products, and it wants the Court to enjoin Agrimar from publicly claiming that Brandt has infringed the patent. Brandt essentially argues that the '734 patent is for a method for producing GA–14, not for GA–14 itself. Since Goemar produced GA–14 and transferred it to Brandt, Brandt claims it is not infringing the patent by using GA–14 in its products.

Brandt's second claim is that Goemar–Agrimar have violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by falsely claiming exclusive rights in the GA–14 product pursuant to the '734 patent.

Third, Brandt is accusing Goemar–Agrimar of using false accusations about patent infringement to unfairly compete with Brandt.

Finally, Brandt claims that Goemar–Agrimar are attempting to monopolize the market for nutritional plant products containing algae pulp by threatening Brandt and its customers with unjustified patent infringement claims—a violation of § 2 of the Sherman Act, 15 U.S.C. § 2.

## II. *Analysis*

### A. Defendants' Motion to Transfer or to Stay Case

On January 15, 1992, Defendants filed the pending motion to transfer this case to the Middle District of Florida, Tampa Division, for consolidation with the contempt motion pending in a related case, *Agrimar Corp. v. Brandt Consolidated, Inc.,* Case No. 90–935–CIV.T–98C (MD Fla.). Alternatively, Defendants move to stay this case pending the resolution of the contempt motion. Defendants argue that the interest of justice requires that the case be transferred to Florida because the Florida court is the only forum where all pending claims can be litigated in one action. Defendants also argue that the principal of comity requires this Court to avoid interfering with the Florida court's enforcement of its permanent injunction. Finally, Defendants contend that neither a transfer nor a stay would prejudice Brandt.

■ Pursuant to 28 U.S.C. § 1404(a), the Court can transfer any civil action to any other district where it might have been brought if such a transfer is more convenient for the parties and the witnesses and the transfer is in the interest of justice. The decision whether to transfer is largely within the Court's discretion and depends upon the facts of the particular case. *Federal Deposit Insurance Corp. v. Citizens Bank & Trust Co.,* 592 F.2d 364, 368 (7th Cir.), *cert. denied,* 444 U.S. 829,. 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). In this case, the Court finds that transfer to the Middle District of Florida, Tampa Division, is inappropriate.

■■ The Defendants' entire argument for transfer is based upon the principal of comity, which requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interfering with each other's affairs. *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Sound judicial administration does indicate that when two actions involving the same issues and parties are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the entire suit. *See Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir.1982). However, in this action, the Defendants' contempt motion pending in the previously-filed Florida suit has been recently denied, thus terminating the Florida court's priority jurisdiction. Since Brandt's declaratory action was filed in this Court before Agrimar filed its own patent infringement action in Florida, any potential comity problems should be addressed to the Florida court. Consequently, the Court denies Defendants' motion to transfer or to stay this case.

### B. Defendant Goemar, S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction

On January 15, 1992, Defendant Laboratoires Goemar, S.A., pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, filed the pending motion to dismiss Plaintiff's complaint against it based upon the Court's lack of personal jurisdiction over Goemar. Goemar contends that Brandt has failed to allege that Goemar has sufficient contacts with Illinois to enable this Court to exercise jurisdiction over it. The Court disagrees and finds that it does have personal jurisdiction over Goemar, S.A., for the purposes of this action.

■■ This Court has personal jurisdiction over a party only if an Illinois state court would have such jurisdiction. *See John Walker & Sons v. De Mert & Dougherty, Inc.,* 821 F.2d 399, 401 (7th Cir.1987). Under Illinois law, the party seeking to establish personal jurisdiction over a nonresident must make out a *prima facie* showing that the court has long-arm jurisdiction. *Kutner v. De Massa,* 96 Ill.App.3d 243, 247–48, 51 Ill.Dec. 723, 727, 421 N.E.2d 231, 235 (1st Dist.1981). Previously, courts had required separate inquiries into whether Illinois' long-arm statute conferred jurisdiction and whether the exercise of jurisdiction comported with the 14th Amendment's due process standards. *See Saylor v. Dyniewski,* 836 F.2d 341, 343 (7th Cir.1988). Effective September 7, 1989, however, the Illinois long-arm statute

(Ill.Rev.Stat. ch. 110, ¶ 2–209) was amended to make its reach coextensive with minimum due process requirements. *See FMC Corp. v. Varonos,* 892 F.2d 1308, 1310–11, n. 5 (7th Cir.1990). Consequently, the Court will confine its analysis to whether asserting jurisdiction over Goemar, S.A., satisfies minimum due process requirements.

■ The central element in the due process analysis is whether the defendant "purposely established minimum contacts in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The Supreme Court has defined minimum contacts as "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The requirement of purposeful availment insures that the defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there." Ultimately, the due process clause enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Applying these principles, the Court finds that subjecting Goemar, S.A., to suit in Illinois does not offend due process.

In deciding a motion to dismiss for lack of personal jurisdiction, the Court must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209 (7th Cir.1984). In this case, Plaintiff Brandt alleges that Goemar, S.A., was a party to sending Brandt and its customer, Vigoro Industries, Inc., letters that threatened patent infringement suits. Both Brandt and Vigoro are based in Illinois. Furthermore, Brandt alleges in its response that Goemar, S.A., shipped the disputed GA–14 product to Brandt in Illinois and that the president of Goemar, S.A., traveled to Illinois to negotiate the contract with Brandt that ultimately led to this litigation. Goemar, S.A., does not deny any of these allegations; consequently, the Court must accept them as true for the purposes of this motion.

While the sending of infringement letters alone may fail to satisfy due process, *see E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc.,* 736 F.Supp. 808 (N.D.Ill. 1990), Goemar, S.A., has additional contacts with Illinois related to the cause of action which do satisfy due process. Goemar, S.A., purposely availed itself of a business relationship with Brandt, an Illinois corporation, and thus it is not unreasonable or unforeseeable for Goemar to be hailed into an Illinois court in response to a suit arising from that relationship. Furthermore, the presence of the Defendant in Illinois while conducting business related to the dispute is also relevant to jurisdiction. Goemar's president was present in Illinois to negotiate and execute the 1986 distribution agreement with Brandt, from which this suit seems to originate. Goemar also shipped the disputed GA–14 to Brandt in Illinois pursuant to that agreement. The Court thus finds that Goemar's continuing relationship with Brandt in Illinois and its affirmative act of being a party to the sending of infringement letters into Illinois make it reasonably foreseeable that it would be hailed into an Illinois court. Accordingly, Goemar's motion to dismiss is denied.

■ Alternatively, this Court can assert jurisdiction over an out-of-state parent (or grandparent) corporation through the activities of its subsidiary. *See Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 419–26 (9th Cir.1977). In this case, Agrimar's jurisdiction-triggering activities can be imputed to Goemar if Agrimar was acting as Goemar's agent or if Agrimar is not an independent corporation but instead functions as a branch or division of Goemar. Under either of these theories, the primary issue is how much control Goemar has over Agrimar's activities. Considering

all relevant facts before it, the Court finds that Agrimar has no independent reason for existing except to market Goemar products in the United States. The extent of Goemar's control over Agrimar is illustrated by the fact that both companies have a common president, both share a unified marketing image—evidenced by a common use of trademarks—and, most importantly, Agrimar functions essentially as the exclusive U.S. distributor for Goemar products. All of these factors indicate a lack of completely independent decisionmaking on Agrimar's part, which allows the Court to "pierce the veil" of the subsidiary to reach the parent. *See generally* 2 J. Moore, *Moore's Federal Practice* ¶ 4.41–1[6], at 4–370—4–377 (2d ed. 1992).

## C. Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

The Defendants have moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making its decision, the Court must accept the well-pleaded allegations of the complaint as true and view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987).

■ In this case, the Plaintiff's complaint contains four counts. The Court finds that Count I, seeking a declaration that Plaintiff has not infringed upon Defendants' process patent, clearly states a claim upon which relief can be granted. Defendants' argument that Plaintiff has infringed upon the patent addresses the merits of the case and is thus inappropriate in a motion to dismiss, which only tests the sufficiency of the pleadings. The Defendants' motion to dismiss as to this count is thus denied.

■ As for Counts II and III, alleging violations of the Lanham Act and unfair competition based on Defendants' "false" patent infringement claims, Rule 8(a) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The Court finds that Plaintiff provides a sufficient factual basis to give the Defendants fair notice of the nature and basis of Counts II and III. Defendants' motion to dismiss Counts II and III is thus denied.

■ Finally, Defendants attack Count IV of Plaintiff's complaint, which alleges anti-trust violations, on the basis that Brandt fails to allege that Defendants' threats of initiating patent infringement actions were in bad faith. The institution by Agrimar and Goemar of an ill-founded patent enforcement scheme could constitute an anti-trust violation if it is part of a purposeful drive to eliminate competition and to monopolize an industry. However, the Defendants have correctly noted that Brandt must plead that Agrimar and Goemar had a bad faith, predatory intent to attain an anti-competitive end, as opposed to a purely defensive motivation to protect their patent interests. *Chromium Industries, Inc. v. Mirror Polishing & Plating*, 448 F.Supp. 544, 558 (N.D.Ill.1978). While Brandt fails to expressly plead bad faith, monopolistic intent can be shown by an attempt to extend a patent beyond the scope of its applicable products or process. *Chromium Industries*, 448 F.Supp. at 558. The Court thus finds that Brandt's allegation to this effect satisfies the requirement of bad faith.

■ Defendants also argue that Brandt's anti-trust claim should be dismissed because it lacks detailed allegations pertaining to the relevant market and Defendants' market power. While Defendants are correct that such allegations are necessary to plead a viable anti-trust claim, *see Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177–78, 86 S.Ct. 347, 350–51, 15 L.Ed.2d 247 (1965), the Court finds that Brandt has met the minimal burden im-

posed by notice pleading and Rule 8(a) of the Federal Rules of Civil Procedure. Brandt alleges that Agrimar and Goemar are attempting to monopolize "the market for nutritional plant products containing algae pulp as an ingredient." Since this dispute arises from Brandt's use of GA–14, which is algae pulp made by a particular process, the Court finds that the relevant market for the anti-trust claim is clearly pleaded. Furthermore, Brandt pleads that Goemar and Agrimar have claimed to be the only companies with the right to manufacture, use or sell GA–14. The Court finds that this allegation suggests that the Defendants have significant market power, well capable of creating a monopoly. While substitutes for GA–14 may exist which lessen Defendants' market power, this is a factual question best left for discovery. Plaintiff Brandt has pleaded a viable anti-trust claim, and thus Defendants' motion to dismiss Count IV is denied.

### D. Plaintiff's Motion for Summary Judgment on Counts I and II

Plaintiff Brandt filed the pending motion for partial summary judgment on March 26, 1992. Brandt seeks summary judgment on Counts I and II of its complaint, which in turn seek a declaration that neither Brandt nor Vigoro have infringed United States Patent No. 4,023,734 and a ruling that Defendants Agrimar and Goemar, S.A., have violated 15 U.S.C. § 1125(a) [§ 43(a) of the Lanham Act] by threatening patent infringement actions in bad faith.

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

### a. *Count I*

In relation to Count I, Brandt argues that the '734 patent is a "process" patent directed to the method of making GA–14, not to the GA–14 itself. Consequently, Brandt contends that a party can utilize the same product as that which Goemar, S.A., and Agrimar describe as GA–14, but made by a different process or method, without infringing upon United States Patent No. 4,023,734. Furthermore, once Goemar, S.A., and Agrimar sell GA–14 to another company, such as Brandt, Brandt argues that the purchaser's use of GA–14 can also not infringe upon a process patent, which is what Goemar and Agrimar have accused Brandt of in this case.

In response, Defendants cite 35 U.S.C. § 271(g) which provides, in part, that:

> Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, sale, or use of the product occurs during the term of such process patent.

Defendants contend that Brandt has used "a product which is made by a process patented in the United States" without their authorization and thus is guilty under 35 U.S.C. § 271(g) of patent infringement. Brandt, in turn, cites a provision of the act which added § 271(g) to the patent statute,

§ 9006 of Public Law 100–418, which limits the applicability of the section to products made or imported after the section's effective date. Brandt contends that all the GA–14 it used was made and imported into the United States prior to the effective date of § 271(g) [February 23, 1989]. Thus, Brandt argues that it is not subject to the restrictions of that section, but is instead subject to the prior rule of law, which stated that a process or method patent could be infringed only if the process were practiced in the United States. Since the GA–14 was produced in France, this prior rule would bar any infringement action against Brandt. Defendants contest Brandt's claim, arguing that significant amounts of GA–14 were imported and delivered to Brandt after February 23, 1989. Brandt maintains that its full inventory of GA–14 was purchased and imported prior to September of 1988. All subsequent GA–14 transactions involved Agrimar borrowing GA–14 from Brandt's inventory for use in its formulations and then replacing it later with its own GA–14 rather than paying Brandt for it.

Brandt also argues that its use of GA–14 after February 23, 1989, is protected under the "grandfather clause" found in the act which added § 271(g). The clause grants an exception to any person who continues to use, sell, or import any specific product already in substantial and continuous sale or use by such person on January 1, 1988, or for which sale or use substantial preparation was made before January 1, 1988. Brandt contends that its efforts, expenditures, and sales in 1986 and 1987 satisfy this exception. Defendants disagree, arguing that since Brandt's right to use GA–14 was restricted by the 1986 distribution agreement, its use of GA–14 under the agreement cannot be considered "substantial and continuous" within the meaning of the grandfather clause. Moreover, Defendants argue that the grandfather clause cannot be used to protect an expansion of Brandt's use of the GA–14 after January 1, 1988.

Finally, Brandt argues that whether § 271(g) applies to this case or not, Brandt is exempt from suit because patent law principles hold that once a patentee has achieved a financial reward for the use or sale of the patented invention, the purchaser has an implied license to use the resulting product. Defendants respond that GA–14 was provided to Brandt under a distribution agreement which limited Brandt's use of the product. Consequently, no implied license could exist.

■ The Court finds that in spite of arguments over the application of 35 U.S.C. § 271(g), there is no genuine dispute as to any material fact surrounding Brandt's purchase of the product GA–14. The Court is persuaded that Brandt maintained two separate inventories of GA–14 during the term of its business relationship with Agrimar (one for Brandt formulations and one for Goemar–Agrimar formulations) and that it had purchased all of the GA–14 in its inventory by September 30, 1988. The Court also finds that any shipments which Brandt received subsequent to that time were actually imported by Agrimar for its inventory. Although some of the GA–14 in these shipments may have been transferred to Brandt's inventory, the record indicates that these transfers were not additional sales but were instead replacements for GA–14 which Agrimar had previously borrowed from Brandt's inventory to incorporate into its own formulations. While technically imported after § 271(g)'s effective date, the status of these later transfers as replacements for GA–14 previously sold to Brandt allow the Court to consider them as equivalent to the GA–14 which Brandt had imported prior to the effective date, but had generously lent to Agrimar. Since Brandt's net inventory did not increase as a result of the replacing of the GA–14 lent to Agrimar, Brandt effectively received its entire inventory of GA–14 prior to the effective date of § 271(g) [i.e., prior to February 23, 1989]. The Court thus finds that Defendants cannot rely on § 271(g) to accuse Brandt of patent infringement.

■ Furthermore, even if the Court applies § 271(g) to this case, it finds that the "grandfather provision" contained in § 9006 of Public Law 100–418, the act

which added § 271(g) to the patent statute (Title 35), would exclude Brandt from § 271(g)'s scope. The Court is not persuaded by Defendants' contentions that the 1986 distribution agreement somehow prevents Brandt's use of GA–14 in 1986 and 1987 from being "substantial and continuous" within the meaning of this provision. Nor is the Court obligated to accept Defendants' version of what interests Congress intended for this provision to protect. The United States Supreme Court has made it abundantly clear that the starting point in statutory interpretation is the language of the statute itself. *United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986). Absent the presence of special circumstances, when the terms of a statute are unambiguous, judicial inquiry is complete. *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987). The Court finds that the plain meaning of the provision is that *any* person who has made substantial and continuous use of a product prior to January 1, 1988, or who has made substantial preparations for such use prior to that date, can continue to use that product. The purpose of this provision is to protect commercial investments. There is no dispute that Brandt invested considerable funds in its GA–14 inventory prior to January 1, 1988, for the sole purpose of using it in its formulations. Consequently, the Court finds that it would be inequitable to bar that use now.

Since the Court finds that § 271(g) does not apply to this case, it must apply pre-§ 271(g) patent law. The well-settled rule of law is that a process patent protects only the method of making a product as well as those products actually made using that method. The product itself is unpatented, since it could potentially be made by another method. *See In re Amtorg Trading Corp.,* 75 F.2d 826, 832 (C.C.P.A.), *cert. denied sub nom. Int'l Agri. Corp. v. Amtorg Trading Corp.,* 296 U.S. 576, 56 S.Ct. 102, 80 L.Ed. 407 (1935). In this case, the Court is persuaded that the GA–14 which Brandt purchased pursuant to the 1986 distribution agreement was made by Goemar's patented process and thus is protected by that patent from any unauthorized use. However, once Goemar and Agrimar sold the GA–14 to Brandt, they lost their ability to control the use of that product pursuant to their patent monopoly. An incident to the purchase of any article, whether patented or unpatented, is the right to use and sell it. The purpose of the patent law is thus fulfilled with respect to any particular article once the patentee has received the reward for the use of his invention by selling the article. Once that purpose is realized, the patent law affords no basis for restraining the use and enjoyment of the thing sold. *United States v. Univis Lens Co.,* 316 U.S. 241, 249–51, 62 S.Ct. 1088, 1092–93, 86 L.Ed. 1408 (1942).

Consequently, Goemar's and Agrimar's contention that Brandt infringed the patent because its use of the GA–14 violated the 1986 distribution agreement is without merit. Contractual restrictions on the use of a patented article after the article has been sold are not enforceable under the patent laws. *United States v. Univis Lens Co.,* 316 U.S. at 250, 62 S.Ct. at 1093. Defendants may have a cause of action under the 1986 agreement, but they do not have one for patent infringement. Neither Brandt nor its customer, Vigoro Industries, have infringed United States Patent No. 4,023,734. The Court thus finds that Brandt has met its burden under Rule 56(c) of the Federal Rules of Civil Procedure and is entitled to judgment as a matter of law on Count I of its complaint.

b. *Count II*

In relation to Count II, Brandt is arguing that by sending letters to its customer, Vigoro Industries, which made false representations of patent infringement and bad faith threats of legal action, Goemar and Agrimar violated § 43(a) of the Lanham Trademark Act [15 U.S.C. § 1125(a)]. Section 43(a) of the Lanham Act provides that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any

combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

Brandt contends that Goemar's and Agrimar's claim to Vigoro that their patent for making GA–14 prohibits Brandt's use of GA–14 in its products is a false representation intended to divert customers away from Brandt's products and thus violates the Lanham Act. Defendants respond that Brandt has failed to prove that their patent infringement claims were made in bad faith and thus conclude that summary judgement should be denied.

■■ The Lanham Act is designed to, among other things, protect competitors from misrepresentations which a defendant makes about its own or another's products and which relate to the principal bases of competition among sellers—in this case, the active ingredients of foliar nutritional sprays. These types of misrepresentations are likely to have a direct and major impact in diverting sales from the plaintiff to the defendant. *See In re Uranium Antitrust Litigation,* 473 F.Supp. 393, 408–09 (N.D.Ill.1979). The facts of this case, as pleaded by Brandt, show that Goemar's and Agrimar's false representation as to the scope of their patent raised a false impression with Vigoro Industries that Defendants are the only authorized source of GA–14. The threat of a patent infringement action then caused Vigoro to offer to halt its sales of Brandt's products. Under these facts, the threat to plaintiff's sales posed by Defendants' claims of patent exclusivity raises a viable Lanham Act claim. *See Chromium Industries, Inc. v. Mirror Polishing & Plating,* 448 F.Supp. 544, 555 (N.D.Ill.1978).

To succeed on the merits of a claim under § 43(a) of the Lanham Act, as amended in 1988, Brandt must show that:

(1) Goemar and Agrimar have made false representations about their own or Brandt's products;

(2) The misrepresented products travel in interstate commerce;

(3) The misrepresentations deceive or are likely to deceive a substantial segment of the intended audience (present or potential customers of Goemar–Agrimar and Brandt), and

(4) The misrepresentations are material (likely to influence the purchasing decision) and they have caused injury, or are likely to do so.

*See Valu Engineering, Inc. v. Nolu Plastics, Inc.,* 732 F.Supp. 1024, 1026 (N.D.Cal. 1990).

■ Contrary to what both Plaintiff and Defendants seem to believe, bad faith is not an element of this cause of action. Both parties seem to have confused the requirements of the common law action for unfair competition, which requires bad faith, with the requirements of a Lanham Act action. The well-settled rule is that there is no requirement under the Lanham Act that a false representation be made wilfully or with the intent to deceive. A mistake is not a defense to an action under § 43(a). *See Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir.1958). Based on the above criteria, the Court finds as a matter of law that Goemar and Agrimar have violated the Lanham Act.

■ The threshold requirement of a false representation is *easily* satisfied. The Court finds as a matter of law that Goemar's and Agrimar's communications with Vigoro contained false claims as to the scope of the '734 patent. The Court, however, makes no finding as to Defendants' knowledge or intent when making

these false claims because none is required. The second requirement is also easily satisfied. Both Plaintiff and Defendants sell their fertilizers in several states, thus subjecting themselves to congressional regulation. The Court is also convinced that the Defendants' false representations are likely to deceive Vigoro into believing that Brandt's products violated Goemar's and Agrimar's patent, thus satisfying the third criteria, since they were accompanied by threats of litigation. Finally, Brandt has satisfied the Court that the false representations are material since they influenced Vigoro to offer to stop selling Brandt's products, which in turn is likely to have an effect on Brandt's future sales to Vigoro. If Vigoro wants nutritional products containing GA–14 in the future, it is likely that it will buy from Agrimar rather than Brandt to avoid potential patent infringement suits. Although Brandt has alleged that Goemar and Agrimar have made these false patent claims to the fertilizer trade in general, the Court finds that no evidence supports this allegation and thus confines its findings to the single customer, Vigoro.

Brandt is seeking both an injunction and money damages. When a plaintiff seeks money damages, it must introduce evidence of actual deception on its customer's part, whereas to receive injunctive relief, the plaintiff need only prove that deception is likely. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.*, 926 F.2d 134, 139 (2d Cir.1991). In this case, the Court finds that Vigoro was actually deceived by Goemar's and Agrimar's false representations as to the scope of the '734 patent. Vigoro's offer to stop selling Brandt's products is mute evidence of its belief in Defendants' claims. Consequently, Brandt may be entitled to both a permanent injunction, barring Goemar and Agrimar from making any further representations to Vigoro or to any other party that Brandt's use of its GA–14 violates the '734 patent, as well as to money damages. However, the Court has no evidence before it as to Brandt's actual losses resulting from Defendants' conduct. Consequently, the Court is unable to grant summary judgment on damages.

### E. Plaintiff's Motion For Preliminary Injunction

Plaintiff Brandt filed the pending motion for preliminary injunction on March 26, 1992. Brandt contends that it will suffer irreparable damage if Agrimar and Goemar, S.A. are not enjoined from threatening Vigoro Industries or any other party with patent infringement litigation if he buys and/or sells Brandt fertilizers containing GA–14. Since the Court has found that Brandt may be entitled to a permanent injunction by allowing Brandt's motion for summary judgment on Counts I and II of its complaint, Brandt's motion for preliminary injunction is denied as moot.

*Ergo,* Defendants' Motion to Transfer Case to Florida For Consolidation With Previously–Filed Related Case or, Alternately, Motion to Stay Case Pending the Outcome of Agrimar's Motion For Contempt Pending in Florida Case (d/e 3) is DENIED.

Defendant Laboratoires Goemar, S.A.'s Motion to Dismiss For Lack of Personal Jurisdiction (d/e 5) is DENIED.

Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted (d/e 7) is DENIED.

Plaintiff Brandt Consolidated's Motion for Summary Judgment on Counts I and II of its Complaint (d/e 15) is ALLOWED. A hearing will be held at 9:00 AM on Tuesday, September 8, 1992, to determine whether Defendants should be permanently enjoined from claiming that Brandt Consolidated or any present or future customer of Brandt has infringed United States Patent No. 4,023,734 and from threatening to initiate litigation based upon such infringement claims against Brandt or anyone with whom Brandt does business.

Plaintiff Brandt Consolidated's Motion for Preliminary Injunction (d/e 17) is DENIED AS MOOT.