**ZENITH ELECTRONICS CORPORATION,**
Plaintiff,

and

**Elgo Touchsystems, Inc.,**
**Plaintiff–Appellant,**

v.

**EXZEC, INC., Defendant–Appellee.**

No. 98–1288.

United States Court of Appeals, Federal Circuit.

July 7, 1999.

**1342**

Vincent L. Johnson, Legal Strategies Group, Emeryville, California, argued, for plaintiff-appellant.

Robert E. Browne, Altheimer and Gray, Chicago, Illinois, argued, for defendant-appellee. With him on the brief was Michael G. Kelber.

Before PLAGER, Circuit Judge, SKELTON, Senior Circuit Judge, and GAJARSA, Circuit Judge.

PLAGER, Circuit Judge.

This case raises issues of priorities among conflicting federal laws, as well as federal preemption of state law. Specifically, the questions raised are whether a federal unfair competition claim irreconcilably conflicts with and is therefore barred by federal patent or antitrust law; and whether, under the same or similar circumstances, the federal law preempts state unfair competition claims.

Exzec, Inc. ("Exzec") alleged that Elo Touchsystems, Inc. ("Elo Touch") had made statements to potential customers of Exzec to the effect that Exzec's product infringes certain Elo Touch patents and that Exzec could not manufacture a noninfringing product, and that these statements were false. On the basis of that allegation, Exzec alleged violations by Elo Touch of § 43 of the federal Lanham Act, and of the state's unfair competition laws.

In response to the claims, Elo Touch moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the two claims for failure to state a claim upon which relief can be granted. Elo Touch argued that its activities in support of its patent rights were governed by federal patent law and applicable antitrust rules, and thus the Lanham Act and state unfair competition laws are in effect "preempted." The U.S. District Court for the Northern District of Illinois denied the motion. *See Zenith Electronics Corp. v. Exzec, Inc.,* No. 93–C–5041, 1997 WL 798907 (N.D.Ill. Dec. 24, 1997) (unreported memorandum and order) (*"Zenith I"*). However, the court agreed to certify its order for immediate appeal pursuant to 28 U.S.C. § 1292(b). *See Zenith Electronics Corp. v. Exzec, Inc.,* No. 93–C–5041, 1998

WL 59570 (N.D.Ill. Feb. 9, 1998) (unreported memorandum and order) ("*Zenith II* "). This court granted Elo Touch's petition for permission to appeal the order. *See Zenith Electronics Corp. v. Exzec, Inc.*, No. 537, 152 F.3d 946, 1998 WL 171429 (Fed.Cir. Mar. 27, 1998) (Table; text of unpublished order in Westlaw) ("*Zenith III* "); 28 U.S.C. § 1292(b)-(c)(1) (1994).

We conclude that Exzec's claims, alleging that Elo Touch's conduct in support of its patent rights violate the Lanham Act and state unfair competition laws, are not absolutely barred by the patent or antitrust laws. This is because the protection otherwise afforded by the patent laws to a patentee's conduct in enforcing its patent may be lost if the patentee acts in bad faith. The question of whether Exzec can prove bad faith by Elo Touch remains for the trial court to determine; on the question presented by the appeal, we affirm the judgment of the district court denying the motion to dismiss the claims.

## BACKGROUND

In this action, Zenith Electronics Corporation ("Zenith") and Elo Touch sued Exzec for infringement of patents directed to touch panel systems for computers, *i.e.,* systems that include screens that respond to touching to operate and control a computer. Zenith is the assignee of the patents (the "Zenith patents"), and Elo Touch is its exclusive licensee which has in turn sublicensed the patents.[1] Zenith and Elo Touch alleged that Exzec's competing touch panel system, known as the "Sure-Touch" system, infringes the patents.

In response, Exzec brought the two claims at issue here. Specifically, Exzec asserted two counterclaims against Elo Touch for "unfair competition": one under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the other under Illinois common law. In support of its counterclaims, Exzec alleges that Elo Touch knew or should have known that the Zenith pat-

ents are limited to touch panels that utilize surface acoustic wave ("SAW") technology, and that Exzec's SureTouch system, utilizing shear technology, does not infringe the Zenith patents. Notwithstanding, according to Exzec, Elo Touch falsely stated to potential customers of Exzec that Exzec's SureTouch system infringes the Zenith patents and that Exzec could not manufacture or sell a noninfringing acoustic touch panel system.

In particular, in paragraph 24 of its second amended pleading, Exzec alleges:

On information and belief, Elo Touch falsely stated to its licensees, which were potential customers of Exzec, that Exzec's shear touch technology infringed Zenith's SAW patents when Elo Touch knew, or should have known, that the scope of the Zenith SAW patents was limited to touch panels which utilized SAW technology. On information and belief, Elo Touch falsely stated to its licensees, which were potential customers of Exzec, that Exzec could not manufacture and/or sell an acoustic touch panel or system which did not infringe Zenith's SAW patents when Elo Touch knew, or should have known, that the scope of the Zenith SAW patents was limited to touch panels which utilized SAW technology.

With specific respect to its § 43(a) counterclaim, Exzec alleges in paragraph 48 of its pleading:

The aforesaid false representations of patent infringement and threats of legal action created and were intended to create confusion, mistake and deception among potential licensees, customers in the trade and to divert prospective licensees and customers of Exzec [and] were made willfully by Zenith and Elo Touch and with the intent to deceive.

And, with specific respect to its state unfair competition claim, Exzec alleges in paragraph 53 of its pleading, "The afore-

---

**1.** For purposes of this appeal, we consider Elo Touch as the patentholder, as neither the parties nor the district court have suggested that the outcome should depend upon Elo Touch's status as an exclusive licensee.

said bad faith conduct of ... Elo Touch ... constitute[s] unfair competitive acts and trade practices in Illinois and elsewhere."

In response to Exzec's federal Lanham Act § 43(a) claim, Elo Touch argued that "a charge of patent infringement (without more) does not state a claim for unfair competition under Section 43(a)." Elo Touch cited in support the district court decisions in *Chromium Industries, Inc. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544 (N.D.Ill.1978), *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F.Supp. 164 (C.D.Ill.1992), and *Publications International, Ltd. v. Western Publishing Co.*, No. 93–C–3074, 1994 WL 23008 (N.D.Ill. Jan.25, 1994) (unreported memorandum and order).

Together, these decisions stand for the proposition that a patentee's allegedly false representation of patent infringement is not actionable under § 43(a), but that a patentee's allegedly false representation that it is the exclusive source of a certain type of product because of its patent is so actionable. This distinction was first drawn in *Chromium Industries*, 448 F.Supp. at 556–57, and was followed in *Brandt Consolidated*, 801 F.Supp. at 174, and *Western Publishing*, 1994 WL 23008, at *1. In *Western Publishing*, the district court described the distinction as, on the one hand, representations of infringement and, on the other hand, representations that a competitor cannot effectively design around the patent (what the court referred to as "exclusive source" representations):

> "[F]alse patent claims are not the kind of unfair competitive activity at which the Lanham Act is directed." *Chromium Industries, Inc. v. Mirror Polishing & Plating Co., Inc.*, 448 F.Supp. 544, 557 (N.D.Ill.1978). However, § 43(a) does reach a seller who, by exaggerating the scope of a patent, creates a false impression that he is the exclusive source of the product. *Id.* at 557. *In other words, the law distinguishes between a patentee's representation that a competitor's product infringes and his representation that the competitor can-*

*not effectively design around the patent.* Exclusive-source claims blow a greater chill on competition and are less vital to the patentee's effort to vigorously protect his legitimate interests. The patentee who asserts such claims, therefore is liable for their falsity, regardless of his good faith.

1994 WL 23008, at *1 (emphasis added).

Contrary to Elo Touch's assertion that these decisions supported dismissal of Exzec's § 43(a) claim because, according to Elo Touch, the claim is based only on infringement representations, the district court concluded that, under these decisions, Exzec's pleading alleges a viable § 43(a) claim. *See Zenith I*, 1997 WL 798907, at *12. In particular, the court referred to the allegation that Elo Touch had falsely stated to its licensees, which were potential customers of Exzec, that Exzec could not manufacture a device that would not infringe the Zenith patents. *See id.*

With respect to Exzec's state common law unfair competition claim, Elo Touch argued that in essence the claim is one for tortious interference with prospective economic advantage and that "the privilege of competition" is an affirmative defense to such a claim. *Id.* at *14. The district court agreed. *Id.* at *14–15. However, the court determined that Exzec had adequately pled the elements of tortious interference with prospective economic advantage. *See id.* Furthermore, the court determined that Elo Touch could not rely on the defense of "privilege" because the defense is not available to a defendant (with respect to this claim, Elo Touch) that has "acted in bad faith," and Exzec's pleading sufficiently alleges that Elo Touch had acted in bad faith. *Id.*

After having its motion to dismiss denied, Elo Touch moved for reconsideration. In its motion for reconsideration, Elo Touch argued, *inter alia*, that the § 43(a) and state unfair competition claims are "pre-empted by Federal Patent and Antitrust Law." *Zenith II*, 1998 WL 59570, at

*2–3, 5. Elo Touch based this argument on this court's decision in *Pro–Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 37 USPQ2d 1626 (Fed.Cir.1996), and the unpublished decision of the U.S. District Court for the Eastern District of Wisconsin in *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, No. 97–C–11, 1997 U.S. Dist. LEXIS 22241 (E.D.Wis. Nov. 26, 1997), which relied heavily on our *Pro–Mold* decision.

The district court denied Elo Touch's motion for reconsideration, reasoning that Exzec's allegations "are distinguishable from those in *Schreiber* and *Pro–Mold.*" *Zenith II*, 1998 WL 59570, at *4. The court noted in particular Exzec's allegation that Elo Touch made false representations to potential Exzec customers that Exzec could not manufacture or sell a noninfringing acoustic touch panel system. *See id.*

The district court also rejected Elo Touch's alternative argument that Exzec's counterclaims are, in the least, "preempted" because of the absence of bad faith. In particular, Elo Touch argued that Exzec's counterclaims are "pre-empted because 'statements concerning a valid patent are not actionable under the Lanham Act or under any other law, at least where such statements are made in good faith.'" *Id.* at *5. The district court found it unnecessary to decide whether this is a correct statement of the law because it determined that Exzec's "allegations reflect that Elo Touch employed bad faith." *Id.*

After addressing Elo Touch's other arguments, which are not relevant here, the district court denied Elo Touch's motion for reconsideration. The court, however, granted Elo Touch's alternative motion to certify its order for immediate appeal pursuant to 28 U.S.C. § 1292(b), which allows such certification when the district court is "of the opinion that [the] order involves a controlling question of law as to which there is substantial ground for difference

of opinion." The district court was of the opinion that the "preemption" issue is such a "controlling question of law." In particular, the district court was concerned that Exzec's § 43(a) and state unfair competition claims may be "preempted" by the federal patent or antitrust laws under the rationale of the *Pro–Mold* or *Schreiber* decisions:

> The rationale in *Schreiber*, largely based on *Pro–Mold*, is that a federal or state unfair competition claim based on the assertion of an invalid patent is preempted because Patent and Antitrust laws provide an adequate remedy. Here, the unfair competition counterclaims against Elo Touch are based on the allegations that Elo Touch falsely and in bad faith represented to potential customers that ExZEC could not manufacture or design a product around Zenith's patent. It appears that an Antitrust claim could provide a remedy in this case and therefore the rationale in *Pro–Mold* and *Schreiber* might be deemed applicable.[2]

*Zenith II*, 1998 WL 59570, at *7.

Pursuant to the procedure mandated by 28 U.S.C. § 1292(b), Elo Touch subsequently petitioned us for permission to immediately appeal the district court's decision, and we, in turn, granted the petition. *See Zenith III*, 1998 WL 171429.

## DISCUSSION

### I. Overview and Jurisdiction

The issue presented is whether Exzec's counterclaims, alleging anticompetitive conduct by Elo Touch, are "preempted" by the federal patent or antitrust laws. Another way to state the question is: if a patentee informs a competitor's customers that the competitor is an infringer (and implicitly or explicitly that the customer who deals with the competitor may become

---

**2.** From the last sentence of this quote it appears that the district court was primarily concerned with a possible conflict with the federal antitrust laws. However, possible conflict with the patent laws was also at issue; indeed, that is Elo Touch's principal argument on appeal. Accordingly, we consider both possible conflicts.

one as well), is the patentee protected from the usual standards for unfair trade practices, imposed by federal and state unfair competition laws, on the theory that the rights accorded a patentee to protect and enforce the patent supersede the usual anticompetition rules? The "rights" accorded a patentee are those understood to be available under patent law, and those defined by court-created limitations on antitrust liability. (We note that Elo Touch attempts to raise several issues in addition to the "controlling question" of "preemption" which prompted the district court to certify its decision for immediate appeal. We do not consider these other issues in this interlocutory appeal; nor, of course, do we foreclose Elo Touch from raising these issues after a final decision on remand, *see* 28 U.S.C. § 1295(a) (1994).)

■ Before considering the merits of this interlocutory appeal, we lay to rest a question regarding our jurisdiction. *See Zenith III,* 1998 WL 171429. The case comes to us in a somewhat unusual posture. The patent claims and defenses (*i.e.,* the claims and defenses regarding infringement, invalidity, and unenforceability of the Zenith patents) raised by the pleadings are no longer at issue in the case. These claims and defenses have fallen by the wayside as a result of the district court entering a joint stipulation and proposed order by the parties dismissing the patent claims "with prejudice." This occurred prior to the district court's decision on Elo Touch's motion to dismiss Exzec's counterclaims.

This series of events raises the question of whether the appeal on the issue before us is properly lodged in this court, or whether it should have been taken to the regional circuit. We readily conclude that we have jurisdiction over this interlocutory appeal, pursuant to 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1). Our exclusive jurisdiction over matters arising in whole or in part under the patent laws is not defeated by the fact that the patent claims have been dismissed with prejudice. "The path of appeal is determined by the basis of juris-

diction in the district court, and is not controlled by the district court's decision or the substance of issues that are appealed." *Abbott Lab. v. Brennan,* 952 F.2d 1346, 1349–50, 21 USPQ2d 1192, 1195 (Fed.Cir.1991). Because the complaint contained patent infringement claims, the district court's jurisdiction arose under 28 U.S.C. § 1338(a). This established the path of appeal, giving exclusive jurisdiction in this court pursuant to 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1). *See Abbott Lab.,* 952 F.2d at 1349–50, 21 USPQ2d at 1195.

Our decision in *Gronholz v. Sears, Roebuck and Co.,* 836 F.2d 515, 5 USPQ2d 1269 (Fed.Cir.1987), is not to the contrary. In *Gronholz* we held that the dismissal of a patent infringement claim *without prejudice* operated as an amendment of the complaint, leaving in that case only a trade secrets claim. 836 F.2d at 516, 518, 5 USPQ2d at 1269, 1271. Thus the suit, so amended, did not arise under 28 U.S.C. § 1338(a). *See id.* Here, in contrast, the dismissal of the patent infringement, invalidity, and unenforceability claims with prejudice constitutes an adjudication of the claims on the merits, not an amendment of the complaint. *See Hartley v. Mentor Corp.,* 869 F.2d 1469, 1473, 10 USPQ2d 1138, 1141 (Fed.Cir.1989). The jurisdiction of the district court over the cause, and the remaining issues, is undisturbed; the statutes mandate that the appeal resides exclusively in this court.

## II. The Lanham Act § 43(a) Claim

■ We turn first to Elo Touch's argument that Exzec does not have a viable cause of action for unfair trade practices under § 43(a) of the Lanham Act. As already noted, the district court was concerned that this claim may be "pre-empted" by the patent or antitrust laws. However, preemption is not the issue with respect to the § 43(a) claim. The concept of preemption originates in the Supremacy Clause of the Constitution, and focuses on the conflict between state and federal

law. *See, e.g., United States v. Palumbo Bros.,* 145 F.3d 850, 862 n. 6 (7th Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 375, 142 L.Ed.2d 310 (1998). Instead, the § 43(a) claim presents the question of a potential conflict between federal statutes—the constitutional issue of preemption is not implicated. *See id.* at 862.

■ Our task is to determine whether there is a conflict between the applicable federal laws, and if so, to resolve it. This involves the application of traditional principles of statutory construction. The first principle in a case such as this is to give effect to each federal law. Each has equal standing, and equal claim for recognition. "It is a cardinal principle of construction that ... [w]hen there are two acts upon the same subject, the rule is to give effect to both if possible." *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939). Unless Congress clearly indicates which of two statutes is to prevail in event of conflict, our responsibility is to interpret and apply them "in a way that preserves the purposes of both and fosters harmony between them." *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.,* 58 F.3d 1498, 1507 (10th Cir.1995).

■ With this principle in mind, we consider whether the availability of a § 43(a) claim here conflicts with the patent or antitrust laws, and if so, how that conflict can be resolved in a manner that permits each law a proper scope. This issue impacts directly on the patent laws, implicating our area of exclusive jurisdiction, as the context involves statements as to the infringement and scope of patents. Accordingly, we decide the question as a matter of this circuit's law. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 50 USPQ2d 1672, 1676 (Fed. Cir.1999) (holding en banc that Federal Circuit law governs question of whether patent law conflicts with trade dress action under § 43(a) of the Lanham Act or preempts such an action under state law); *Pro–Mold,* 75 F.3d at 1574, 37 USPQ2d at 1631 (declining to defer to regional circuit law on the issue of whether inequitable

conduct constitutes unfair competition). For the same reasons, we apply our law in deciding, below, whether, in the present context, Exzec's state unfair competition claim is preempted by the patent or antitrust laws. *See id.*

A. The nature of the § 43(a) claim

The district court recognized Exzec's § 43(a) claim only with respect to Exzec's allegation that Elo Touch falsely stated to potential Exzec customers that Exzec could not manufacture a noninfringing product. *See Zenith II,* 1998 WL 59570, at *4. However, in the same paragraph of Exzec's pleading in which this allegation is made (paragraph 24, *ante* ), Exzec also alleges that Elo Touch falsely stated to these same potential customers that Exzec's product infringes the Zenith patents, when, it is alleged, Elo Touch knew or should have known that there is no infringement. To paraphrase, Exzec alleges that Elo Touch made false representations (1) of patent infringement and (2) of Exzec's inability to design around the patents. As we earlier noted, the differences between these two allegations have been thought to be significant to the question before us, and we shall consider each of these allegations in turn.

With respect to these allegations, the most relevant portion of § 43(a) provides:

(1) Any person who, on or in connection with any goods or services ... uses in commerce ... any ... false or misleading description of fact, or false or misleading representation of fact, which—

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1) (1994). This portion of § 43(a) provides the basis for what are generally known as "false advertising,"

"trade libel," and "product disparagement" claims. 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:10, at 27–19 to 27–20 (4th ed.1998).

■ There is substantial agreement among the circuits as to the elements of such claims, though the precise wording used varies. *See, e.g., B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir.1999); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1383 n. 3 (5th Cir.1996); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir.1992); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C.Cir.1990); *see also* 4 McCarthy § 27:24, at 27–39. As relevant here, the plaintiff (with respect to this claim, Exzec) must allege and ultimately prove: (1) that the defendant (Elo Touch) made a false or misleading statement of fact in commercial advertising or promotion about the plaintiff's goods or services; (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the defendant caused the statement to enter interstate commerce; and (5) that the statement results in actual or probable injury to the plaintiff. *See id.* For purposes of this interlocutory appeal, in which we decide whether recognizing Exzec's § 43(a) claim presents a conflict with the patent or antitrust laws, we assume (without deciding) that the conduct alleged here is within the scope of § 43(a), and that Exzec has sufficiently pled the necessary elements for such a claim.[3]

**B. The case law that concerned the district court**

We first consider the prior decisions that gave rise to the district court's concerns—our *Pro–Mold* decision and the unreported district court *Schreiber* decision. We shall also consider our decision in *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 227 USPQ 784 (Fed.Cir. 1985), because Elo Touch argues so strenuously that that decision, like *Pro–Mold*, indicates that Exzec's § 43(a) claim is not viable.

In *Pro–Mold*, the patentee ("Pro–Mold") sued another company ("Great Lakes") for patent infringement. Great Lakes counterclaimed for unfair competition, alleging that Pro–Mold "acted in bad faith by filing its lawsuit knowing that the patent was [unenforceable] because of inequitable conduct." *Pro–Mold*, 75 F.3d at 1571, 37 USPQ2d at 1628. This court concluded that the allegations did not give rise to a § 43(a) claim, stating:

The basis for Great Lakes' assertion of unfair competition was inequitable conduct. However, there is no legal basis for a holding that inequitable conduct, or the assertion of a patent procured through inequitable conduct, constitutes unfair competition. In order to successfully assert a violation of federal law, a party must cite a specific statutory provision that he claims has been violated and prove that violation. Great Lakes has not done so here. The only basis for a federal unfair competition claim is Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1) (1994). That provision prohibits false designations of origin or false or misleading descriptions of

---

**3.** At this stage of the case it appears that neither the parties nor the district court have explicitly analyzed the relevant text of § 43(a), or the required elements of a claim arising therefrom, to determine whether § 43(a) reaches Exzec's allegations. We note in passing, without any assessment of the merits, that several district courts in recent years have recognized particular § 43(a) claims involving marketplace representations of patent infringement. *See, e.g., Wicker*

*Group v. Standard Register Co.*, 1994 WL 761244, 33 USPQ2d 1678, 1680 (E.D.Va. 1994); *Minebea Co. v. Papst*, 13 F.Supp.2d 35, 44 (D.D.C.1998); *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 964 F.Supp. 90, 95, (W.D.N.Y.1997); *Brandt Consol.*, 801 F.Supp. at 174. We leave it to the parties and the district court to more fully consider whether Exzec's particular allegations in its pleading state the necessary elements of a § 43(a) claim.

goods or services which are likely to cause confusion. Obtaining a patent through inequitable conduct does not violate this statute.

The established remedy for inequitable conduct is unenforceability of the patent. If a trial court considers that the case is an exceptional one, which is often found when the patent has been improperly procured, attorney fees can be awarded. Moreover, the Supreme Court has held that "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174, 86 S.Ct. 347, 349, 15 L.Ed.2d 247, 147 USPQ 404, 406 (1965). Thus, there are adequate remedies to deal with inequitable conduct when it is found. Resort to federal unfair competition law is not one of them. *Id.* at 1575, 37 USPQ2d at 1631.

*Pro–Mold* must be understood in the context of general patent law. A patent procured through inequitable conduct is not invalidated thereby, but the courts refuse to enforce such a patent as a matter of equitable principle. *Pro–Mold* tells us that the remedy under federal law available to a defendant who is made the subject of an infringement suit, when the defendant alleges that the suit is based on a patent procured through inequitable conduct in dealing with the Patent Office, is the traditional remedy of having the patent adjudged unenforceable, or perhaps, in appropriate circumstances, holding the patentee liable for an antitrust violation. The remedy for such an insupportable patent suit is not a suit for unfair trade practices under the Lanham Act.

Here, in contrast, Exzec's § 43(a) claim is not premised on a suit by Elo Touch for patent infringement and a defense that the patent is unenforceable for inequitable conduct before the Patent Office. Rather, the counterclaim against Elo Touch is based on alleged marketplace statements, *i.e.*, the alleged Elo Touch statements to potential Exzec customers that Exzec's product is infringing and that Exzec is unable to design around the patents. The gravamen of Exzec's claim is marketplace misconduct, not abuse of the administrative and judicial process.

In the unreported district court *Schreiber* opinion, cited in the arguments in this case, the district court, based on its view of the import of *Pro–Mold,* dismissed a § 43(a) claim against a patentee that was based in part on the patentee sending letters to the § 43(a) claimant's customers, accusing the claimant of patent infringement, when allegedly the patentee knew there was no infringement. 1997 U.S. Dist. LEXIS 22241, at *3, 17–18. The *Schreiber* court opined that the above quoted *Pro–Mold* language

applies equally to the filing of a lawsuit and the sending of an infringement notice [to customers of the accused infringer.] Indeed, under the patent laws, an infringement notice is closely related to, and often a precursor of, a suit for infringement, because the failure to provide such a notice can limit the damages recoverable in a patent suit. 35 U.S.C. § 287(a) & (b)(5). It makes little sense to say that filing a bad faith patent infringement suit does not violate the Lanham Act but sending a bad faith infringement notice prior to suit does.

*Id.* at *18.

The *Schreiber* court observation, that sending infringement notices to a party's customers can be closely related to a suit for infringement, is correct. The difference, however, is that the initiation of an infringement suit is clearly not covered by the text of § 43(a), while a communication to the customers of the accused infringer, in certain circumstances, may be. We cannot agree with the *Schreiber* court's conclusion, which fails to adequately take that difference into account.

The statement in *Pro–Mold* that "there are adequate remedies [in patent law] to deal with inequitable conduct," 75 F.3d at 1574, 37 USPQ2d at 1631, does not indicate

that a claim under § 43(a) for marketplace misconduct involving a patent is barred by the patent or antitrust laws. That statement says no more than that Great Lakes was not without a remedy under patent law for the claim it brought; the court was not stating a general principle for determining priority among federal laws.

■ Indeed, the fact that certain conduct is actionable under one federal law, and, in conjunction with other additional conduct, is also actionable under another federal law, does not, without more, create an impermissible conflict between the federal acts. To the contrary, as previously discussed, the overriding principle for resolving apparent conflicts among federal laws is to give appropriate effect to each.

Nor is Exzec's § 43(a) claim foreclosed by this court's decision in *Concrete Unlimited.* In that case, Cementcraft, Inc. ("Cementcraft"), in response to being sued for patent infringement, counterclaimed that the patentee ("Concrete Unlimited") "competed unfairly by attempting to enforce its patent because it was fraudulently obtained." *Concrete Unlimited,* 776 F.2d at 1538, 227 USPQ at 785. The district court agreed, holding that Concrete Unlimited had competed unfairly by enforcing its invalid patent, and awarding $150,000 therefor. *See id.* at 1537, 227 USPQ at 784. We however disagreed, and reversed the unfair competition judgment, stating (in entirety):

> The district court concluded that Concrete Unlimited's actions during the present litigation "may be considered in regard to unfair competition" and that Concrete Unlimited is "guilty of acts of unfair competition by taking business away from the Defendant by threats and infringement actions based on the fraudulently obtained patent." That conclusion, asserted by Cementcraft, effectively means that Concrete Unlimited should not have enforced its patent rights during the course of this litigation because its patent was later held invalid. The '028 patent carried a presumption of validity into this litigation that placed the burden of persuasion by clear and convincing evidence to the contrary upon the challenger. 35 U.S.C. § 282; *SSIH Equipment, S.A. v. United States International Trade Commission,* 718 F.2d 365, 375, 218 USPQ 678, 687 (Fed.Cir. 1983). Concrete Unlimited had the right to exclude others from making, using, and selling the invention and to enforce those rights until the '028 patent was held invalid. Concrete Unlimited did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit. *See* 35 U.S.C. § 281. Concrete Unlimited's actions in this case were not unfair competition, and we reverse the district court's holding to the contrary.

*Id.* at 1539, 227 USPQ at 785.

Thus, *Concrete Unlimited,* like *Pro-Mold,* dealt with threats of and actual infringement suits; it did not involve marketplace assertions of infringement and inability to design around. Furthermore, the specific question of the applicability of § 43(a) was not considered; the court merely spoke of "unfair competition" generally. Accordingly, *Concrete Unlimited* did not address or resolve the question before us.

In sum, neither *Pro-Mold* nor *Concrete Unlimited* mandate that Exzec's § 43(a) claim be held barred by the patent or antitrust laws. We note that this conclusion is supported by our recent decisions in *Dow Chemical Co. v. Exxon Corp.,* 139 F.3d 1470, 46 USPQ2d 1120 (Fed.Cir. 1998), and *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 47 USPQ2d 1769 (Fed.Cir.1998). Those decisions do not address directly the question of whether Exzec's *federal* unfair competition claim under § 43(a) is barred by the patent or antitrust laws, because the decisions considered whether *state* unfair competition claims were preempted by the patent laws rather than the issue of conflict among different federal laws. The decisions are, however, analogous because they

addressed conflict between the patent laws and unfair competition claims premised on a patentee's marketplace conduct, albeit from the perspective of federal preemption of state law.

Significantly, in those decisions we held that the state law claims were not preempted by the patent laws and that our prior decision in *Concrete Unlimited* was not to the contrary. In particular, in *Dow Chemical* we held that state unfair competition claims asserted against a patentee for tortious interference with actual and prospective contractual relations were not preempted by the patent laws, despite the fact that the claims relied on proving that the patent was obtained through inequitable conduct. 139 F.3d at 1473, 46 USPQ2d at 1123. The court reasoned that the claims are not preempted by the patent law remedy for inequitable conduct—*i.e.*, unenforceability of the patent—because the state law causes of action did not clash with the objectives of the patent laws, and because they included additional elements not found in the patent law remedy. *See id.* at 1473, 1475, 1477, 46 USPQ2d at 1123–26. In reaching this decision, we distinguished *Concrete Unlimited* on the ground that that case involved "good faith enforcement of a patent," whereas the claims in *Dow Chemical* were premised on bad faith patent enforcement, the patentee allegedly having known that the patent was unenforceable due to inequitable conduct. *Id.* at 1476, 46 USPQ2d at 1126. We emphasized that the state tort claims at issue were premised on "bad faith misconduct in the marketplace." *Id.* at 1477, 46 USPQ2d at 1126. Bad faith marketplace conduct played a central role in our *Hunter Douglas* decision as well. In that case we opined that there is no conflict-type preemption of various state law claims based on publicizing an allegedly invalid and unenforceable patent in the marketplace as long as the claimant can show that the patent holder acted in bad faith in publication of the patent. *See Hunter Douglas*, 153 F.3d at 1336–37, 47 USPQ2d at 1782.

### C. The conflict analysis

Since nothing in our prior case law dictates the answer to the question of whether recognizing a § 43(a) claim in the context here would present an irreconcilable conflict with the patent or antitrust laws, we address the issue as a matter of first impression.

#### 1. Antitrust laws

■ We first turn to the question of whether Exzec's § 43(a) claim may be barred by the federal antitrust laws. In this regard, the district court stated, "It appears that an Antitrust claim could provide a remedy in this case and therefore the rationale in *Pro–Mold* ... might be deemed applicable." *Zenith II*, 1998 WL 59570, at *7. The court appears to be referring to the latter part of the above-quoted passage in *Pro–Mold*:

> [T]he Supreme Court has held that "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." Thus, there are adequate remedies to deal with inequitable conduct when it is found. Resort to federal unfair competition law is not one of them.

75 F.3d at 1575, 37 USPQ2d at 1631 (citation omitted). The point of this statement is simply that there is in federal law established remedies for infringement suits wrongfully brought, and that this includes, in addition to remedies provided under patent law, remedies within the ambit of the antitrust laws. *See, e.g., Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068, 46 USPQ2d 1097, 1104 (Fed. Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 178, 142 L.Ed.2d 145 (1998).

The issue is not whether Exzec has adequate remedies under the antitrust laws. Rather, the question is whether allowing Exzec to pursue a § 43(a) claim under the facts of this case would somehow conflict with the purpose and scope of that body of law. There is no conflict. First, rather

than conflicting, the Lanham Act and the antitrust laws share a common purpose—fostering fair and unfettered competition. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (noting that Congress enacted the Lanham Act to "foster competition"); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 877, 228 USPQ 90, 101 (Fed.Cir.1985) ("the underlying goal of the antitrust laws is to promote competition").

Second, the elements of a federal antitrust claim and a § 43(a) claim are substantially different. For example, unlike a § 43(a) claim, a Sherman Act § 2 antitrust claim requires, among other things, identification of the relevant market and establishment of monopoly power in that market. *See, e.g., United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) ("The offense of monopoly power under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."). *See also Loctite Corp.*, 781 F.2d at 875, 228 USPQ at 100 (noting that to establish an illegal attempt to monopolize the claimant must establish a specific intent to monopolize and a dangerous probability of success). We need not belabor the point. Recognizing a § 43(a) claim in the context here will in no way thwart the congressional purpose embodied in the antitrust laws.

### 2. Patent laws

▮ We turn now to the question of whether Exzec's § 43(a) claim may be barred by the patent laws. That is, we consider the potential conflict between the patent laws and the federal proscription against unfair trade practices contained in the Lanham Act. Our task in this regard is not unlike that which this and other courts encountered in resolving the tension between the federal patent and antitrust laws, when an accused infringer seeks to impose antitrust liability on a patentee in

response to the patentee seeking judicial enforcement of the patent. The patent and antitrust laws are complementary in purpose in that they each promote innovation and competition, see *Loctite Corp.*, 781 F.2d at 876–77, 228 USPQ at 100–01, yet a conflict seemingly arises when an accused infringer attempts to use "the long reach of antitrust law" to frustrate an honest patentee's right to enforce a patent. *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir.1979).

Decisions in this area have aimed at achieving a suitable accommodation between the differing mechanisms of the patent and antitrust laws. The accommodation has been achieved by erecting certain barriers to antitrust suits against a patentee attempting to enforce its patent. For example, in *Handgards* the plaintiff based its antitrust action upon its contention that the antitrust defendant had earlier initiated a series of patent infringement suits against the plaintiff in bad faith, that is, with knowledge that the patents, though lawfully-obtained, were invalid. *Id.* at 987, 994. To accommodate the tension such an action presented with the patent laws, the Ninth Circuit required proof of bad faith by clear and convincing evidence. *See id.* at 996. Similarly, for an antitrust counterclaim premised on the patentee allegedly having brought suit on its patent without any belief in infringement, we have required clear and convincing proof of bad faith by the patentee. *See Loctite Corp.*, 781 F.2d at 876–77, 228 USPQ at 100–01. More recently, this court stated that a patentee who brings an infringement suit may be stripped of its exemption from the antitrust laws and "subject to antitrust liability ... if the alleged infringer (the antitrust plaintiff) proves [among other things] (1) that the asserted patent was obtained through knowing and willful fraud ..., or (2) that the infringement suit was 'a mere sham ...'." *Nobelpharma*, 141 F.3d at 1068, 46 USPQ2d at 1104.

Though the differences between the Lanham Act and the patent laws may not

appear as sharp as those between the patent and antitrust laws, there is a tension. We have on several occasions recognized that a patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith. In *Hunter Douglas* we recently stated that "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." 153 F.3d at 1336, 47 USPQ2d at 1782. Similarly, in *Concrete Unlimited* we recognized that a "patent owner has the right to . . . enforce its patent, and that includes threatening alleged infringers with suit." 776 F.2d at 1538, 227 USPQ at 785.

We have made similar statements in a number of other cases. *See, e.g., Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897, 49 USPQ2d 1308, 1312 (Fed. Cir.1998) ("Federal precedent is that communications to possible infringers concerning patent rights is not improper if the patentholder has a good faith belief in the accuracy of the communication."); *Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 869, 45 USPQ2d 1225, 1232 (Fed. Cir.1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."), *cert. denied,* —— U.S. ——, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998); *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709, 24 USPQ2d 1173, 1180 (Fed.Cir.1992) (stating that a patentholder "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"). *See also Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37–38, 33 S.Ct. 202, 57 L.Ed. 393 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal."); *Kaplan v. Helenhart Novelty Corp.,* 182 F.2d 311, 314, 85 USPQ 285, 287 (2d Cir.1950) ("[I]t is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are.").

This privileged right of a patentee to notify the public of its patent rights is statutorily rooted in the patent laws at 35 U.S.C. § 287, which authorizes patentholders to "give notice to the public" of a patent by marking its patented articles and makes marking or specific notice to the accused infringer a prerequisite to the recovery of damages. *See Hunter Douglas,* 153 F.3d at 1336, 47 USPQ2d at 1782.

The previously-described principles for resolving conflict among federal acts require us to recognize this precept of patent law. *See Palumbo Bros.,* 145 F.3d at 862. Accordingly, we conclude that, before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith. This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith, *see, e.g., Seven–Up Co.,* 86 F.3d at 1383 n. 3; *Brandt Consol.,* 801 F.Supp. at 174 ("bad faith is not an element of this [§ 43(a)] cause of action"); *Procter & Gamble Co. v. Chesebrough–Pond's, Inc.,* 747 F.2d 114, 119 (2d Cir.1984) (plaintiff need not prove bad faith to establish § 43(a) liability).

Requiring bad faith in this context is closely analogous to the conclusion we reached in *Hunter Douglas* —*i.e.,* that, to impose *state* tort liability against a patentee for publicizing its patent, bad faith in publication of the patent must be established to avoid preemption by patent law, regardless of whether the state cause of

action otherwise requires bad faith. *See Hunter Douglas,* 153 F.3d at 1336–37, 47 USPQ2d at 1782.

By adding a bad faith requirement to a § 43(a) claim in the context of this case, we give effect both to the rights of patentees as protected by the patent laws under ordinary circumstances, and to the salutary purposes of the Lanham Act to promote fair competition in the marketplace. As thus understood, there is no conflict between the demands of the Lanham Act and the Patent Act, and a patentee is easily able to comply with both Acts. Furthermore, patent law is not frustrated because bad faith marketplace statements concerning patents do not further the purposes of the patent law. *Cf. Handgards,* 601 F.2d at 993 ("[I]nfringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law.").

Indeed, recognizing a § 43(a) claim for such conduct should have no discernible effect on the three objectives of the patent laws identified by the Supreme Court in *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 480–81, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), namely, providing an incentive to invent, promoting the full disclosure of inventions, and ensuring that ideas in the public domain remain there. *Cf. Dow Chem.,* 139 F.3d at 1475, 46 USPQ2d at 1124 (opining that the three objectives of patent law are not adversely affected by recognizing a state tort remedy for a patentee threatening to sue on a patent obtained through inequitable conduct).

On the other hand, with respect to the Lanham Act, recognizing a § 43(a) claim in this context will further the statutory purposes of § 43(a) of "preventing deception and unfair competition" in the marketplace, *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 773, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), and requiring bad faith will not unduly thwart those purposes. In sum, imposing § 43(a) liability on a patentee for marketplace statements regarding infringement and scope of its patent, assuming such statements otherwise satisfy the elements of § 43(a), does not impermissibly conflict with the patent laws as long as the statements are proven to have been made in bad faith.

In the case before us, there are two allegedly false statements at issue: (1) that Exzec's product infringes the Zenith patents; and (2) that Exzec could not manufacture a noninfringing product (which we read as stating that Exzec could not design around the patents). Only statements of the latter type would be actionable under § 43(a) if we were to follow the distinction drawn in the previously discussed district court opinions in *Western Publishing,* 1994 WL 23008, at *1, *Brandt Consolidated,* 801 F.Supp. at 174, and *Chromium Industries,* 448 F.Supp. at 556–57. However, we decline to draw that distinction. Both statements, if made in bad faith, are damaging to competition and are not the type of statements protected by the patent laws. Furthermore, such line drawing would unnecessarily complicate the law, creating the issue as to whether a particular statement falls in the former or latter category. Thus either or both such statements, if made in bad faith, can be reached by § 43(a) (assuming the elements of such a claim are otherwise made out) without conflicting with the patent or antitrust laws.

Exactly what constitutes bad faith remains to be determined on a case by case basis. Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out. Furthermore, statements to the effect that a competitor is incapable of designing around the patent are inherently suspect. They are suspect not only because with sufficient effort it is likely that most patents can be designed around, but also because such a statement appears nearly impossible to confirm *a priori.* For these reasons, the bad faith element may be much easier to satisfy for statements of this type. *See Mikohn*

*Gaming,* 165 F.3d at 897, 49 USPQ2d at 1312 (noting that "bad faith" may encompass subjective as well as objective considerations, and that the patentee's particular statements themselves are not irrelevant to determining bad faith).

## III. The State Unfair Competition Claim

■■ Finally, we address the question of whether Exzec's state-law tortious interference claim may be preempted by the patent or antitrust laws. The issue of preemption by patent law has been substantially resolved by our recent *Dow Chemical* and *Hunter Douglas* decisions. As noted previously, in *Dow Chemical* we held that state tortious interference with contractual relations claims were not preempted by the patent laws (despite the fact that the claims relied on proving inequitable conduct), in part because the claims involved allegations of bad faith marketplace conduct by the patentee (*i.e.,* asserting its patent in the marketplace allegedly having known that the patent was unenforceable due to inequitable conduct). 139 F.3d at 1476–77, 46 USPQ2d at 1126. While the tortious interference claims in *Dow Chemical* involved inequitable conduct, we also noted that a holder of a valid and enforceable patent who knowingly makes baseless infringement assertions against a competitor's customers may also be subject to such liability. *Id.*

In *Hunter Douglas,* we concluded that state tort claims, including tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patentholder acted in bad faith in its publication of the patent. 153 F.3d at 1322, 1336–37, 47 USPQ2d at 1771, 1782. Thus, under the *Hunter Douglas* analysis, to avoid patent law preemption of such state law tort claims, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim. *Id.* at 1336–37, 47 USPQ2d at 1782.

Guided by our *Dow Chemical* and *Hunter Douglas* decisions, and consistent with the analysis previously set forth with re-

gard to the application of federal unfair trade practice law, we hold that bad faith is a prerequisite to Exzec's state-law tortious interference claim; without it, the claim is preempted by patent law.

■■■ With regard to possible preemption of Exzec's state tort claim by federal antitrust law, for the reasons discussed above regarding the relationship of federal antitrust law and federal unfair trade law, we conclude that the state tort claim is not preempted by federal antitrust law. Preemption can occur in any one of three ways—explicit, field, or conflict preemption. *See Hunter Douglas,* 153 F.3d at 1332, 47 USPQ2d at 1779. We perceive no preemption in any of these ways. *Cf. California v. ARC Am. Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) (holding state law claim for price fixing not preempted by federal antitrust laws based in part on presumption against preemption in areas such as unfair business practices traditionally regulated by states). Indeed, Elo Touch has not even attempted to explain how the antitrust laws preempt Exzec's state tort claim. The antitrust laws are not at issue in the context here.

## IV. Summary

We have considered, in this interlocutory appeal, the specific issue of whether, under the facts and circumstances of this case, Exzec's § 43(a) and state unfair competition claims are barred by the patent or antitrust laws. We conclude that they are not, but that the right of a patentee afforded by patent law to assert that a competitor is engaged in wrongful conduct with respect to the patent requires that a complaining competitor allege and prove bad faith for each such claim. The district court, assuming that bad faith might be required, determined that Exzec had adequately alleged bad faith. The correctness of that determination is not before us. Based on the assumption that the district court was correct, we affirm the district court's decision on the issue presented.

## CONCLUSION

The judgment of the district court denying the motion to dismiss is affirmed, and the matter is remanded to the court for further proceedings consistent with this opinion.

*AFFIRMED AND REMANDED.*

## COSTS

Each party shall bear its own costs.