**George S. ALLEN, Plaintiff,**

v.

**HOWMEDICA LEIBINGER, INC., Howmedica, Inc., and Pfizer, Inc., Defendants.**

**No. CIV.A.98–613–JJF.**

United States District Court, D. Delaware.

March 28, 2002.

Philip A. Rovner, Potter, Anderson, & Corroon, L.L.P., Wilmington, Delaware,

Kenyon & Kenyon, Washington, DC (William K. Wells, Jr., John P. McGroarty, of Counsel), for Plaintiff.

Rudolf E. Hutz, Harold Pezzner, Matthew F. Boyer, Connolly, Bove, Lodge, & Hutz, L.L.P., Wilmington, Delaware, for Defendants.

### *MEMORANDUM OPINION*

FARNAN, District Judge.

Presently before the Court is a Motion For Summary Judgment filed by Defendants Howmedica Leibinger, Inc., Howmedica, Inc., and Pfizer, Inc. (collectively "Defendants") (D.I.221), and a Motion For Partial Summary Judgment filed by Plaintiff George S. Allen, M.D., Ph.D. (hereinafter "Plaintiff") (D.I.233). For the reasons set forth below Defendants' Motion will be granted and Plaintiff's Motion will be denied.

### *BACKGROUND*

#### I. Factual Background

##### A. The Parties And The Technology At Issue

Plaintiff is a professor of neurological surgery at the Vanderbilt University Medical Center. (D.I. 240 at 3). Plaintiff, along with a team of doctors and engineers, developed a new medical imaging technique referred to as the ACUSTAR® Technology, which enables doctors to locate tumors in the brain with a new level of accuracy and reliability through the use of implantable fiducial markers. (D.I. 234 at 4).

The early development of the ACUSTAR® technology was funded by Codman & Shurtleff, a subsidiary of Johnson & Johnson. (D.I. 234 at 5). Due to an alleged change of business focus, Johnson & Johnson abandoned the project and trans-

ferred all ACUSTAR® assets to Plaintiff in January 1996. (D.I. 234 at 5).

After Plaintiff acquired the ACUS-TAR® assets, Plaintiff attempted to commercialize the technology. (D.I. 234 at 5). Negotiations between Plaintiff and Picker International, Inc. (hereinafter "Picker") (now known as Marconi), led to a license agreement in September 1997, under which Picker would pay Plaintiff a royalty in the event that Picker commercialized the ACUSTAR® technology. (D.I.235, Ex. 14). Picker was a company that marketed and sold medical systems, including medical imaging systems, and had been involved with Plaintiff and the ACUS-TAR® technology in the early 1990's. (D.I. 234 at 5).

Defendant Howmedica Leibinger, Inc. (hereinafter "HLI") is a Delaware corporation that distributes medical devices in the United States that are manufactured in Germany by Howmedica Leibinger GmbH (hereinafter "HLG").[1] (D.I. 240 at 3). Since 1996, HLI has offered for sale an implantable fiducial marker under the trade name OST–REG™, which is allegedly similar to the ACUSTAR® technology. (D.I. 240 at 3).

In January 1996, HLI and HLG were acquired by Defendant Pfizer, Inc. (hereinafter "Pfizer"). Defendant Howmedica, Inc. (hereinafter "HI"), now known as MTG Divestitures, Inc., is a subsidiary of Pfizer. (D.I. 240 at 4). In December 1998, Stryker Corporation (hereinafter "Stryker") acquired HLI, HLG, and substantially all of the assets of HI from Pfizer. (D.I. 240 at 4).

## B. The 457' Patent And The German Counterpart

The relevant patent in the instant case is Defendants' U.S. Patent No. 5,394,457

(hereinafter "the '457 Patent") relating to the OST–REG™ implantable fiducial marker, which was filed with the United States Patent and Trademark Office (hereinafter "USPTO") on October 7, 1993 by counsel at Jones, Day, Reavis & Pogue (hereinafter "Jones Day"). (D.I. 240 at 4–5). The relevant claims of the '457 Patent are allegedly "a word-for-word duplicate" of HLG's German Patent which was published in the German Patent Office on April 21, 1994 (German Patent No. 4233978). (D.I. 240 at 4).

A few months after the German Patent was published, Electa (a German company) initiated Opposition proceedings against the German Patent before the German Patent Office alleging that the German Patent was not patentable because of certain prior art, specifically the Rousseau II reference (hereinafter "Rousseau II"). (D.I. 240 at 5). In August 1994, Axel von Hellfeld, an attorney with the German law firm of Wuestoff & Wuestoff who was handling the German Patent, received notice of the opposition filed by Electa (hereinafter "the German opposition"). (D.I. 240 at 5). Mr. von Hellfeld brought the German opposition to the attention of Dr. Robert Boesecke, a scientist employed by HLG. (D.I. 240 at 5). The German opposition proceeded, and the German Patent was revoked by the German Patent Office on January 22, 1996. (D.I. 240 at 5). HLG appealed the decision, and the German Federal Patent Court rejected the appeal. (D.I. 240 at 6).

In the meantime, the '457 Patent issued on February 28, 1995. (D.I. 240 at 5). At the time the '457 Patent issued, neither Jones Day nor the USPTO were aware of the German opposition. (D.I. 240 at 5).

---

1. Originally, HLG was a defendant in this matter; however, the Court granted HLG's motion to dismiss for lack of personal jurisdiction in October 1999. (D.I. 127; D.I. 128).

## C. The Interference Proceeding

In October 1995, Plaintiff filed an amendment to his then pending patent application for the ACUSTAR® technology. (D.I. 240 at 6). Because Plaintiff presented Claim 22 from Defendants' '457 Patent in the amendment, Plaintiff requested an interference proceeding with the 457' Patent to determine priority of invention. (D.I. 240 at 6). On June 28, 1996, the USPTO declared an interference between the '457 Patent and Plaintiff's pending patent application.[2]

Early in the interference proceeding, Defendants filed a preliminary motion to redefine the interfering subject matter by designating claims 2–21 as separately patentable and not corresponding to the single broad count.[3] Plaintiff did not oppose this motion and, in February 1997, the USPTO deferred ruling on the motion until final hearing.

In May 1997, Plaintiff was informed of the opposition and revocation of HLG's German Patent by Picker. On June 4, 1997, Plaintiff allegedly confronted Defendants with the German opposition and revocation based on the Rousseau II prior art. On July 1, 1997, Plaintiff filed a preliminary motion requesting that the administrative patent judge take notice of the Rousseau II reference. Defendants filed a motion to strike Plaintiff's request as untimely because plaintiff had not complied with the proper procedure for filing preliminary motions. On July 22, 1997, the USPTO advised both parties that Plaintiff's request and Defendants' motion would be deferred until final hearing.

In November 1997, Defendants discovered that the Rousseau II reference was actually the third in a series of related publications, which includes Clarysse and Rousseau I. (D.I. 240 at 7, 11). Defendants specifically offered to withdraw their objection to the consideration of Rousseau II so long as the USPTO would consider the entire series of references. (D.I.240, Ex. 14). In their briefing for final hearing, Defendants argued that the series of prior art references rendered Plaintiff's claims unpatentable, and also conceded that "for consistency Leibinger's '457 patent claims 1 and 22 would also be invalid." (D.I. 240 at 7, D.I. 240, Ex. 10).

On December 5, 2000, the USPTO issued its final decision. Despite the fact that neither Plaintiff's request to take notice of Rousseau II nor Defendants' request to consider Rousseau I and Clarysse were timely raised during the preliminary motions period, the USPTO exercised its discretion to consider the issue of claim patentability over the prior art raised by these references. (D.I. 235, Ex. 1 at 5–6, n. 4). Specifically, the USPTO denied Defendants' motion to have claims 2–21 of the '457 Patent separated from the count, and held that all claims of the '457 Patent are invalid as anticipated by or obvious over Rousseau II. (D.I.235, Ex. 1). Additionally, the USPTO held that all of Plaintiff's claims included in the interference were unpatentable under 35 U.S.C. § 102/ § 103 over Rousseau I or Clarysse. (D.I. 235, Ex. 1).

## D. Picker's Inquiry With HLI

During the course of Plaintiff's negotiations with Picker in 1996 to fund the further development and commercialization of Plaintiff's ACUSTAR® technology, James McNally, a Picker representative, contact-

---

**2.** Although McCrory, rather than Plaintiff, was the named junior party to the interference proceeding with Defendants, Plaintiff was the junior party-in-interest.

**3.** A "count" defines what the USPTO has determined is the broadest patentable subject matter common to the applications or patents in the interference. *See* 37 C.F.R. § 1.601(f).

ed Frank Murdock, HLI's vice president, to inquire about Defendants' fiducial marker technology (hereinafter the "McNally/Murdock conversation"). (D.I. 240 at 13). McNally learned about Defendants' fiducial marker through a trade publication, and telephoned Murdock sometime in August 1996 to discuss Defendants' marker. (D.I. 240 at 13). During the conversation, Murdock indicated that Defendants' marker was patented, identified the '457 Patent, and represented that Defendants' patent position was strong. (D.I. 234 at 9; D.I. 235, Ex. 13 at 63–75).

Following the conversation, Murdock sent McNally a sample of the fiducial marker, a copy of the '457 Patent, and a copy of the "Manual Marker" product brochure. (D.I. 240 at 15). The Manual Marker brochure was printed in Germany by HLG in January 1996. (D.I.235, Ex. 8). Specifically, the Manual Marker brochure indicated that Defendants' manual marker system was "patented in the United States; Germany." (D.I.235, Ex. 8).

## II. Procedural Background

On October 28, 1998, Plaintiff filed the instant suit against Defendants. (D.I.1). By his Amended Complaint, Plaintiff alleges claims of tortious interference with business relations under Ohio common law, deceptive trade practices under Ohio Revised Code Annotated §§ 4165.02(A), 4165.03, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (D.I.78). Specifically, Plaintiff alleges that Defendants' '457 Patent is invalid in view of Rousseau II and unenforceable because of inequitable conduct (i.e. withholding and/or suppressing Rousseau II) that occurred during both the prosecution of the '457 Patent and the

interference proceeding. (D.I.78). Additionally, Plaintiff alleges that Defendants' officers and employees knew of the facts constituting invalidity and unenforceability of the '457 Patent before the date of its issuance. (D.I.78). Despite this knowledge, Plaintiff alleges that Defendants falsely represented to Picker that Defendants' technology was protected by the '457 Patent. (D.I.78). Plaintiff alleges that these false representations influenced Picker's ACUSTAR® purchasing decision and substantially depressed the price Plaintiff ultimately received for the ACUSTAR® technology. (D.I.78).

Aside from the limited issue regarding the parties' recent commercialization efforts of their technology, discovery in this matter is complete and the parties have filed the instant Motions (D.I. 221; D.I. 233). (*See* D.I. 271). By their Motion, Defendants seek judgment as a matter of law on all of Plaintiff's claims. (D.I.221). Plaintiff has opposed Defendants' Motion For Summary Judgment (D.I.221), and has filed his own Motion For Partial Summary Judgment on his unfair competition claim.[4] (D.I. 233; D.I. 229).

## DISCUSSION

### I. Standard Of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all

---

**4.** The parties arguments in support of and in opposition to the instant Motions virtually mirror one another. Accordingly, the Court will not separately address the instant Motions (D.I. 221; D.I. 233).

inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" *Id.*

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ...
> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**II. Whether Either Plaintiff Or Defendant Is Entitled To Summary Judgment On Plaintiff's Unfair Competition Claim Under Section 43(a) Of The Lanham Act, 15 U.S.C. § 1125(a)**

■ Plaintiff contends that Defendants misrepresented the nature of their technol-ogy in the marketplace. (D.I. 234 at 12). Specifically, Plaintiff contends that Defendants falsely represented that their technology was protected by the '457 Patent through conversations with Picker employees and the distribution of marketing brochures. (D.I. 234 at 15). Because these false representations influenced Picker's ACUSTAR® purchasing decision and substantially depressed the price Plaintiff ultimately received for the ACUSTAR® technology, Plaintiff contends that Defendants' conduct constitutes unfair competition under Section 43(a) of the Lanham Act. (D.I. 234 at 2). Although the parties dispute the details of Defendants' actions, three things are clear: (1) all of Defendants' actions involve communications relating to their patent rights; (2) Defendants' technology was protected by the '457 Patent when all communications at issue occurred; and (3) the '457 Patent is presumed to be valid. The issue is whether, in light of these facts, there is sufficient evidence to establish that Defendants' actions rise to the level of unfair competition prohibited by the Lanham Act.

Section 43(a) of the Lanham Act states in pertinent part:

> (1) Any person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which -
>
> \* \* \* \* \* \*
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B)(1998).

■ The Third Circuit has made clear that a Lanham Act plaintiff is required to

prove by a preponderance of the evidence that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *See Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms, Inc.*, 19 F.3d 125, 129 (3rd Cir.1994). Additionally, when, as in this case, a Lanham Act claim is asserted against a patent holder for marketplace activity in support of its patent, a plaintiff is also required to establish that the patent holder acted in bad faith. *See Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed.Cir.1999). This sixth element is necessary in order to avoid a conflict between the Lanham Act, which could deprive a patentee of the right to notify the public about the potential infringement of its patent, and the patent laws, which make marking or specific notice of patented articles a prerequisite to the recovery of damages. *Id.*

Defendants contend, among other things, that Defendants did not make a false or misleading representation about their fiducial marker technology or act in bad faith. The Court will turn to the parties arguments with respect to these elements to determine whether there is sufficient evidence to establish that Defendants' actions rise to the level of unfair competition.

### A. Whether Defendants Made False Or Misleading Statements As To Their Product

Plaintiff contends that, through conversations with Picker employees and the distribution of marketing brochures, Defendants falsely represented that their technology was protected by the '457 Patent. (D.I. 234 at 15). Specifically, Plaintiff contends that the '457 Patent was invalid at the time of the McNally/Murdock conversation and during the time which Defendants distributed their "Manual Marker" brochure. (D.I. 234 at 12–13). Plaintiff contends that, based on Rousseau II, HLG's German Patent was revoked by the German patent office on January 22, 1996. (D.I. 234 at 13). Because the '457 Patent is a "word-for-word duplicate" of HLG's German Patent, and because Defendants' representations that their fiducial markers were protected by the '457 Patent occurred after the German Patent was revoked, Plaintiff contends that Defendants' representations were literally false. (D.I. 234 at 15). Alternatively, Plaintiff contends that Defendants' representations were misleading because the '457 Patent was eventually held invalid and, at the time the representations were made, Defendants were aware of the German revocation and the '457 Patent was involved in an interference proceeding. (D.I. 229 at 18).

Defendants contend that the '457 Patent was not held invalid by the USPTO until December 5, 2000. (D.I. 240 at 28). Because all marketplace representations at issue occurred prior to December 5, 2000, Defendants contend that their representations with respect to the '457 Patent were not false or misleading. (D.I. 240 at 28–29).

■ After reviewing the parties arguments and the applicable law on this issue, the Court concludes that Defendants' marketplace representations with respect to the '457 Patent were not literally false. Whether a statement or representation is literally false must be determined by ana-

lyzing the statement or representation in the context in which it is made. *See Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*, 735 F.Supp. 597, 600 (D.Del.1989), *aff'd* 902 F.2d 222 (3rd Cir.1990). The Court is not aware of any case in which a party, by asserting that its product is covered by a valid patent, has been held to have made a literally false statement, when that party's product was in fact protected by a valid patent. Because Defendants' statements and/or representations that their fiducial markers were protected by the '457 Patent occurred prior to the date the '457 Patent was held invalid, the Court concludes that Defendants statements and/or representations were literally true. Indeed, to hold otherwise would be contrary to the patent laws, which authorize patentees to mark their patented articles and make marking or specific notice to the accused infringer a prerequisite to the recovery of damages. 35 U.S.C. § 287.

With regard to Plaintiff's alternative contention, the Court concludes that a factfinder could find that Defendants' marketplace representations with respect to the '457 Patent were misleading. During the McNally/Murdock conversation, Murdock represented to McNally that there was "no problem" with Defendants' '457 Patent. (D.I. 236, Ex. 26 at 3). At the time of this conversation, however, Defendants were aware that the '457 Patent was involved in an interference proceeding in which Rousseau II was cited as invalidating prior art. Defendants were also aware that Rousseau II formed the basis for the revocation of HLG's German Patent. On these facts, the Court finds that a genuine issue of material fact exists as to whether Defendants representation that there was "no problem" with their '457 Patent was misleading. Accordingly, the Court will turn to the parties arguments with respect to the sixth element, to determine if there

is sufficient evidence to establish that Defendants' representations were made in bad faith.

## B. Whether Defendants Acted In Bad Faith

■ Plaintiff contends that Defendants acted in bad faith because Defendants knew that their '457 Patent was invalid, but nonetheless represented to the marketplace that their fiducial marker technology was protected by the '457 Patent. (D.I. 234 at 19). Specifically, Plaintiff contends that Defendants' knowledge of the German Patent's revocation based on Rousseau II equates to knowledge of the '457 Patent's invalidity. (D.I. 234 at 20). Because Defendants were aware of the German Patent's revocation at the time of the McNally/Murdock conversation and during the time in which the "Manual Marker" brochure was distributed, Plaintiff contends that Defendants acted in bad faith by representing that their fiducial marker technology was protected by the '457 Patent. (D.I. 234 at 20–21).

Defendants contend that they were not even aware of the German Patent's revocation at the time all marketplace representations were made. (D.I. 240 at 29). Nonetheless, Defendants contend that knowledge of the German Patent's revocation based on Rousseau II does not equate to knowledge of the '457 Patent's invalidity. (D.I. 240 at 30). Specifically, Defendants contend that the claims of the '457 Patent differed significantly from the claims of the German Patent. (D.I. 240 at 31). In this regard, Defendants contend that none of the claims that it sought to have separated from the count of the interference proceeding (i.e. claims 2–21) correspond to the three German Patent claims held invalid by the German Patent Court. (D.I. 240 at 31). Additionally, Defendants contend that Plaintiff's suggestion that a

foreign patent court's ruling compels an identical ruling by the USPTO is specious. (D.I. 240 at 31). Because the claims of the '457 Patent differed from the claims of the German Patent, and because a foreign patent court's ruling does not compel an identical ruling by the USPTO, Defendants contend that, even if they were aware of the German Patent's revocation, they would not have known of the '457 Patent's invalidity until the USPTO held the '457 Patent invalid on December 5, 2000. (D.I. 240 at 30).

 A clear case of bad faith representations is made out "if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent." *See Zenith Electronics Corp.*, 182 F.3d at 1354. Exactly what constitutes bad faith is determined on a case by case basis. *Id.*

After reviewing the parties arguments and the applicable law on this issue, the Court concludes that Defendants marketplace representations were not made with knowledge of the '457 Patent's invalidity. Plaintiff's entire argument is premised on the assumption that Defendants' knowledge of the German Patent's revocation equates to knowledge of the '457 Patent's invalidity.[5] The Federal Circuit, however, has specifically rejected as "specious" the argument that a United States court should adopt the conclusion of a foreign tribunal. *See Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907 (Fed.Cir.1986); *see also Heidelberger Druckmaschinen AG v. Hantscho Commercial Products, Inc.*, 21 F.3d 1068, 1072 (Fed.Cir.1994) (caution-ing considering the action of a foreign patent examiner, since "international uniformity in theory and practice has not been achieved"). Thus, even assuming that the claims of the '457 Patent and the German Patent are identical, and Defendants had knowledge of the German Patent's revocation when all marketplace representations were made, the Court cannot conclude that Defendants were required to concede their constitutionally protected property right in the '457 Patent on the basis of a foreign patent court's ruling. Accordingly, the Court concludes that Defendants marketplace representations that their fiducial marker technology was protected by the '457 Patent were not made in bad faith. Because Plaintiff has failed to establish that a genuine issue of material fact exists with respect to Defendants' bad faith, the Court will grant Defendants' Motion For Summary Judgment (D.I.221) on Plaintiff's unfair competition claim.

### III. Whether Defendants Are Entitled To Summary Judgment On Plaintiff's State Tort Claims

 It is well recognized that state tort claims based on a patent holder's representation of its patent rights to the marketplace are preempted by the patent laws unless a claimant can establish that the patent holder acted in bad faith. *See Zenith Electronics Corp.*, 182 F.3d at 1355 (citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1337 (Fed.Cir. 1998) (holding that to require less than bad faith "would impermissibly alter the balance between the competing purposes of federal patent law that Congress has prescribed"), overruled on other grounds (ci-

---

5. As previously indicated, by his Complaint, Plaintiff alleges that Defendants' marketplace representations were made not only with knowledge of the '457 Patent's invalidity, but also with knowledge of the '457 Patent's unenforceability. Plaintiff, however, fails to ad-dress Defendants' alleged knowledge of the '457 Patent's unenforceability in support of his contention that Defendants' acted in bad faith, and therefore, the Court will not address these allegations.

tation omitted)). Because Plaintiff claims of tortious interference with business relations under Ohio common law, and deceptive trade practices under Ohio Revised Code Annotated §§ 4165.02(A), 4165.03, are based on Defendants' marketplace representations that their fiducial marker technology was protected by the '457 Patent, Plaintiff is required to establish that a genuine issue of material fact exists with respect to Defendants' bad faith in order to survive summary judgment. *See id.* For the same reasons set forth above, the Court concludes that Defendants marketplace representations that their fiducial marker technology was protected by the '457 Patent were not made in bad faith. Accordingly, the Court will also grant Defendants' Motion For Summary Judgment (D.I.221) on Plaintiff's state law claims.

### CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion for Summary Judgment (D.I.221) and will deny Plaintiff's Motion For Partial Summary Judgment (D.I.233).

An appropriate Order will be entered.

### ORDER

At Wilmington this 28th day of March 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (D.I.221) is **GRANTED;**

2. Plaintiff's Motion For Partial Summary Judgment (D.I.233) is **DENIED.**