ENZO LIFE SCIENCES, INC.,
Plaintiff/Counterclaim
Defendant,

v.

DIGENE CORPORATION,
Defendant/Counterclaim
Plaintiff

v.

Enzo Biochem, Inc., Additional
Counterclaim Defendant.

No. CIV.A.02–212–JJF.

United States District Court,
D. Delaware.

March 31, 2003.

Richard D. Kirk, Esquire of Morris, James, Hitchens & Williams L.L.P., Wilmington, DE, Patton Boggs L.L.P., McLean, VA (Mark R. Labgold, Ph.D., Kevin M. Bell, Laura A. Donnelly, of counsel), Richard J. Oparil, Esquire of Patton Boggs L.L.P., Washington, DC, for CounterClaim Plaintiff, Digene Corporation.

Josy W. Ingersoll, and Sara Beth Reyburn Esquires of Young, Conaway, Stargatt & Taylor, L.L.P., Wilmington, DE, Kenyon & Kenyon, New York, NY (Richard L. DeLucia, Jeffrey M. Butler, and Paul M. Richter, Jr., of counsel) for Counterclaim Defendant, Enzo Biochem, Inc.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Counterclaim Defendant Enzo Biochem Inc.'s Motion to Dismiss Digene Corporation's Counterclaims (D.I.26), for the reasons set forth below, the motion will be denied.

## I. BACKGROUND

This action began with the present Defendant/Counterclaim Plaintiff Digene Corporation ("Digene") filing suit against the present Counterclaim Defendant Enzo Biochem, Inc. ("Biochem") seeking declaratory judgment of invalidity and non-infringement of the patent-in-suit, U.S. Patent No. 2,221,581B1 (the "'581 Patent") (Civil action No. 02–196–JJF). That original action was stayed and the present infringement claim has been brought by Plaintiff Enzo Life Sciences, Inc. ("Enzo Life Science"), formerly known as Enzo Diagnostics, Inc., with the Court allowing Defendant Digene to raise any previously asserted claims as counterclaims. Digene filed an answer to the complaint along with counterclaims against Biochem, the parent company of wholly owned subsidiary Enzo Life Science. The claims and counterclaims arise from the awarding of the '581 Patent on April 24, 2001 and assigned on its face to "Enzo Diagnostics, Inc. c/o Enzo Biochem, Inc." Both Enzo and Digene are companies involved in the development, manufacture and distribution of proprietary RNA and DNA testing systems.

The alleged factual basis for Digene's counterclaims are: 1) a press release issued May 14, 2001, by Biochem announcing that "the Company" has been awarded the '581 Patent (D.I. 19, Counterclaim ¶¶ 12, 14); and 2) a press release issued by Biochem on March 18, 2002, stating that "Enzo" is the owner of the '581 patent and that "Enzo" intends to pursue infringement claims against Digene. (D.I. 19, Counterclaim ¶ 24). Digene maintains that Biochem's statements were false, misleading, and intended to interfere with Digene's legitimate business because at all relevant times Enzo Life Science, and not Biochem, actually owned the '581 patent. Digene claims violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count III), Unfair Competition under the Delaware Deceptive Trade Practices Act, 6 *Del. C.* §§ 2531 et seq. (Count IV), and Tortious Interference With Prospective Business Relations (Count V).

## II. Parties' Contentions

Biochem contends that Digene's counterclaims are either in conflict with or preempted by Federal Patent Law because Digene has failed to plead "bad faith" on the part of Biochem in its statements about the '581 patent. Additionally, Biochem contends that Digene has failed to allege facts pertaining to other required elements of the counterclaims (Counts III–V). With regard to Count III, Biochem alleges that in addition to the failure to plead "bad faith," Digene has failed to plead the other requisite elements for a claim under the Lanham Act. Additionally, Biochem claims that Count IV is deficient in that Digene fails to allege facts regarding "misleading identification of business or goods" or "false or deceptive advertising" as required for a claim under the Delaware Deceptive Trade practices Act, 6 *Del. C.* §§ 2531 et seq. (D.I. 27 at 12). Finally, Biochem challenges the sufficiency of the counterclaim for Tortious Interference With Prospective Business Relations (Count V). Specifically, Biochem claims that Digene has failed to identify any business relationship consisting of an "actual or potential contract" as required under Delaware Law or, in the alternative, any damage to any identified business relationship. This lack of specificity, Biochem argues, renders Digene's assertions bald and conclusory. (D.I. 27 at 12–14).

Digene responds that their counterclaims against Biochem are proper because at the time of the press releases, Biochem did not own the '581 patent. They point out that such counterclaims (Counts III–V) are not asserted against Enzo Life Science, the actual owner of the '581 patent. (D.I. 30 at 15). Accordingly, Digene argues that there is no requirement to plead "bad faith" under the Lanham Act claim when the defendant is not the patent holder. (D.I. 30 at 15). Alternatively, assuming the requirement exists, Digene maintains that they have sufficiently, "implicitly" plead "bad faith" on the part of Biochem. (D.I. 30 at 17). Digene further responds that, under Delaware law, they have sufficiently pled all necessary elements of the Uniform Deceptive Trade Practices Act (Count IV), and the Tortious Interference claim (Count V).

## III. Applicable Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure a motion to dismiss for failure to state a claim should be granted if "a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In examining a complaint, the Court assumes the truth of all well-pled allegations and "construes the complaint in the light most favorable to the plaintiff" determining, "whether, under any reasonable reading of the pleadings, the plaintiff

may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–666 (3d Cir.1988). Additionally, a plaintiff need not allege the existence of every element of his or her claim as long as the allegations plead facts sufficient to provide the defendant with "fair notice of the transaction" and to "set[ ] forth the material points necessary to sustain recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir.1998). However, a court need not accept "bald assertions" or "legal conclusions" when determining if a complaint is sufficient to survive a motion to dismiss. *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1429 (3d Cir.1997). *See also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993).

## IV. Discussion

Construing the allegations in the light most favorable to Digene, the Court concludes that Digene has stated claims for which relief can be granted in Counts III, IV and V.

## A. The Lanham Act

■ When a Lanham Act claim is asserted against a patent holder for marketplace activity in support of its patent, that plaintiff is required to allege that the patent holder acted in bad faith. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed.Cir.1999). The purpose of the "bad faith" pleading is to avoid a conflict between the Lanham Act, which could deprive a patentee of the right to notify the public about the potential infringement of its patent, and federal patent laws, which make marking or specific notice of patented articles a prerequisite to the recovery of damages. *Id.* Here, the Court notes that neither party has presented, nor has this Court found case law suggesting that the bad faith pleading requirement of the Lanham Act extends to statements made in the marketplace by a non-patent holder

that is also the parent company and assignor of the patent-in-suit.

However, even if Digene were required to plead bad faith, the Court concludes that under the liberal rules of notice pleading, Biochem has been sufficiently provided with fair notice of the material points of their claims, including bad faith.

■ Under the Lanham Act a plaintiff must allege that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms, Inc.*, 19 F.3d 125, 129 (3d Cir.1994); *Allen v. Howmedica Leibinger, Inc.*, 197 F.Supp.2d 101, 108 (D.Del.2002).

In Count III, Digene asserts that: 1) Biochem made a false or misleading claim of ownership to the '581 patent; 2) Biochem's claim of entitlement to damages and injunctive relief for Digene's alleged infringement of the '581 Patent was false and/or misleading; 3) Biochem has knowingly and willfully misrepresented to the public, including Digene's customers, that the goods and services supplied by Digene infringe the '581 Patent; 4) Biochem has knowingly and willfully disparaged by false and misleading representations of fact, the goods supplied by Digene; 5) both Digene's and Biochem's products are sold and used in interstate commerce; and 6) Biochem has engaged in other conduct which creates a likelihood of confusion or of misunderstanding regarding the goods or services supplied by Digene and/or Bio-

chem. (D.I. 19 ¶¶ 38–39, 42–45, *see also* ¶¶ 48–53).

Here, the allegations cited above satisfy the Lanham Act's first and second requirements because Digene claims that Biochem "knowingly and willfully" made false or misleading statements regarding Digene's "goods and services." (D.I. 19 ¶ 42–43).

Additionally, for purposes of a motion to dismiss, the Court concludes that the third element of alleging that the false misrepresentation was material in that it is likely to influence purchasing decisions, is sufficiently pled in the Complaint. Specifically, Digene alleges that "Biochem has engaged in other conduct which creates a likelihood of confusion or of misunderstanding regarding the goods or services supplied by Digene and/or Biochem" (D.I. 19 ¶ 45).

■ Further, in regard to the fourth element, the Court concludes that the press releases at issue are commercial advertising. Representations constitute commercial advertising if they consist of: 1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services; 4) that is disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within the industry. *Guardian Life Insurance Co. of America v. American Guardian Life Assurance Co.*, Civ. A. No. 95–3997, 1995 WL 723186, *3, 1995 U.S. Dist. Lexis 18772, at *10 (E.D.Pa. December 4, 1995) (citation omitted). Applying this standard, the Court finds that the press releases constitute commercial advertising or promotion within the industry, because they were commercial speech, Digene and Biochem are competitors, and they were disseminated sufficiently to the relevant public.

Additionally, in regard to the second prong of the fourth element, Digene plainly alleges that both its products, and those advertised by Biochem are "sold and used in interstate commerce", in satisfaction of this element. (D.I. 19 ¶¶ 40–41). Finally, Digene claims a likelihood of injury from Biochem's conduct, including "damage to its business, reputation and good will", and therefore, the Court finds that Digene has sufficiently pled the final element of a Lanham Act claim. (D.I. 19 ¶ 46).

In sum, the Court finds that, for purposes of a motion to dismiss, Digene has adequately pled all elements its Lanham Act Counterclaim (Count III) against Biochem.

## B. The Uniform Deceptive Trade Practices Act

■ The relevant portion of Delaware's Deceptive Trade Practices Act provides that:

A person engages in a deceptive trade practice, when, in the course of a business, vocation, or occupation, that person:

(5) Represents that goods or services have ... characteristics ... that they do not have, or that a person has a ... status ... that the person does not have;

(8) Disparages the goods, services, or business of another by false or misleading representations of fact;

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 *Del. C.* § 2532(a). Although Biochem claims that this is not the type of action that this state law is meant to encompass, the Court recognizes that the act is "remedial in nature and liberally construed." *State ex rel. Brady v. Preferred Florist Network, Inc.*, 791 A.2d 8, 20 (Del.Ch. 2001).

In Count IV, Digene avers that Biochem; 1) knowingly misrepresented it's ownership of the '581 patent; 2) knowingly

and willfully disparaged Digene's goods through that misrepresentation; and 3) engaged in other conduct that created the likelihood of confusion. (D.I. 19 ¶¶ 47–54). Accordingly, the Court finds that all elements required under the Delaware statutory scheme are sufficiently pled to withstand the motion to dismiss.

## C. Tortious Interference with Prospective Business Relations

■ In Delaware, to establish a claim for tortious interference with a prospective contractual relationship, a plaintiff must prove: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted. *Lucent Info. Management, Inc. v. Lucent Techs. Inc.*, 5 F.Supp.2d 238, 243 (D.Del.1998).

In Count V, Digene claims alleges that: At all relevant times, Digene had the valid business relationship or expectancy in connection with its Hybrid Capture® products.

Biochem had knowledge of such relationship or expectancy.

Biochem, through its statements and course of conduct set forth above, intentionally interfered with Digene's relationship or expectancy

By reason of Biochem's intentional interference, Digene has suffered and will continue to suffer damages, including lost sales and profits, that Digene would have made but for Biochem's acts

D.I. 19 ¶¶ 56–59.

■■ In regard to the first element of a valid business relationship or expectancy, Digene asserts in Count V that it had a valid relationship or expectancy in connection with its Hybrid Capture® products.

Defendants argue that the Plaintiffs have not stated a cognizable claim because have not identified the prospective business relationship with which the Defendants allegedly interfered.

Contrary to Biochem's arguments, the Court finds that Digene has pled sufficient facts to satisfy this element. Specifically, Digene, in its counterclaim alleged that Biochem issued two press releases which stated that: 1) the "the Company" has been awarded the '581 Patent (D.I. 19, Counterclaim ¶¶ 12, 14); and 2) a second press release stated:

Although this lawsuit was initiated by Digene, it actually seeks to have the court decide whether Enzo's patent rights in the field of 'Hybrid Capture' technology were and are being violated by Digene's sale of its "Hybrid Capture" products...Enzo's Patent is valid and infringed by Digene, and we intend to seek monetary damages from Digene that our company has incurred as a result of Digene's infringement as well as a permanent injunction."

D.I. 19 Counterclaim ¶ 24. The Court finds that when viewing the Complaint in the light most favorable to the Digene, Biochem's alleged actions constitute attempts to induce third parties, namely customers buying Digene's Hybrid Capture® products, not to enter into or continue their business relations with Digene. Although Biochem points to case law which suggests that Biochem must identify the prospective business relationship, the Court notes that these cases were in the context of a summary judgment motion rather than a motion to dismiss. *See e.g. Lucent Info. Management, Inc. v. Lucent Techs. Inc.*, 5 F.Supp.2d 238, 243 (D.Del. 1998) (dismissing a tortious interference with prospective business relations at the summary judgement stage). Due to the differing standards, between a summary

judgment and a motion to dismiss, the Court finds that the cases cited by Biochem do not provide guidance in the context of a motion to dismiss. Therefore, the Court will proceed to examine whether Digene has sufficiently pled the remaining elements of tortious interference with prospective business relations.

In regard to the knowledge element, Digene states that "Biochem had knowledge of such an expectancy", thereby satisfying the pleading requirements in regard to this element. (D.I. 19 Counterclaim ¶ 57). Next, Digene alleges that "Biochem through its statements and course of conduct set forth above, intentionally interfered with Digene's relationship or expectancy and thereby induced or caused a breach or termination of that expectancy." (D.I. 19 Counterclaim ¶ 58). Bases on this, the Court finds that Digene has adequately pled the third element for this cause of action. Finally, Digene alleges that "[b]y reason of Biochem's intentional interference, Digene has suffered and will continue to suffer damages, including lost sales and profits, that Digene would have made but for Biochem's acts." (D.I. 19 Counterclaim ¶ 59). The Court finds that this pleading sufficiently alleges the damages element of a claim for tortious interference with prospective business relations for purposes of a motion to dismiss.

In sum, the Court finds that Digene has sufficiently pled the elements of Counterclaims III, IV and V in order to withstand a motion to dismiss. Additionally, the Court notes that under the system, of notice pleading, all Digene was required to do was provide "a short and plain statement of [his] claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2). Digene satisfied this requirement, as it put Biochem on notice as to the circumstances surrounding its alleged tortious behavior. Also, the court notes that there are discovery mechanisms, such as interrogatories, for ascertaining more details regarding the allegations of the complaint. Accordingly, the Motion to Dismiss Counterclaims III, IV and V will be denied.

An appropriate Order will be entered.

### ORDER

NOW THEREFORE, For The Reasons discussed in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED this 31st day of March 2003, that Counterclaim Defendant Enzo Biochem Inc.'s Motion to Dismiss Digene Corporation's Counterclaims (D.I.26) is *DENIED*.